Miguel PONS, Appellant

v.

REPUBLIC OF CUBA, Appellee.

No. 16274.

United States Court of Appeals
District of Columbia Circuit.

Submitted April 6, 1961.

Decided July 27, 1961.

Messrs. Nathan M. Lubar and Harold J. Nussbaum, Washington, D. C., by leave of court, submitted for appellant on the record, briefs and argument for appellant in No. 15861.

Messrs. David Rein, Washington, D. C., and Leonard B. Boudin, New York City, by leave of court, submitted for appellee on the record, briefs and argument for appellee in No. 15861.

Mr. Isadore G. Alk, Washington, D. C., filed a brief on behalf of the First National Bank of New York, as amicus curiæ.

Before EDGERTON, BAZELON and BURGER, Circuit Judges.

EDGERTON, Circuit Judge.

On a former appeal we remanded this case for the reason and on the terms stated in our opinion of March 9, 1961. Pons v. Republic of Cuba, 110 U.S.App. D.C. 67, 288 F.2d 879. The District Court vacated its former order, again dismissed appellant Pons's counterclaim as not stating a claim on which relief could be granted, again directed the Clerk to pay to appellee Republic of Cuba $56,474.72 on deposit in the court's registry, and again left undecided Cuba's claim to an additional amount. We have jurisdiction of this appeal because, on the remand, the court found there was no just reason for delay and directed entry of a final judgment. The parties have submitted this appeal on the record, briefs and oral argument of the former appeal.

Cuba brought this suit against Pons, a Cuban national. Aside from his counterclaim, Pons does not dispute Cuba's claim to the money in the court's registry. The counterclaim is for the value of property in Cuba which Pons says the Cuban

government took from him without compensation.

■ "Every sovereign State is bound to respect the independence of every other sovereign State, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory." Underhill v. Hernandez, 1897, 168 U.S. 250, 252, 18 S.Ct. 83, 42 L.Ed. 456; Oetjen v. Central Leather Co., 1918, 246 U. S. 297, 303, 38 S.Ct. 309, 62 L.Ed. 726; Ricaud v. American Metal Co., 1918, 246 U.S. 304, 309, 38 S.Ct. 312, 62 L.Ed. 733. Specifically, "What another country has done in the way of taking over property of its nationals * * * is not a matter for judicial consideration here." United States v. Belmont, 1937, 301 U.S. 324, 332, 57 S.Ct. 758, 81 L.Ed. 1134.

■ Pons says his property was seized "Without any legal justification and without due process of law * * *." We cannot consider this question. "It should make no difference whether the foreign act is, under local law, partially or wholly, technically or fundamentally, illegal. No such distinction may be gleaned from the cases. So long as the act is the act of the foreign sovereign, it matters not how grossly the sovereign has transgressed its own laws." Banco de Espana v. Federal Reserve Bank, 2 Cir., 1940, 114 F.2d 438, 444. The Court of Appeals for the Second Circuit, in an opinion by Judge Learned Hand, has applied the principle to an act that was outrageous. The Nazis had seized the plaintiff's property because he was a Jew. Judge Hand found it "consistent with the record that they may have forced the plaintiff to transfer the shares before December 1938, and it was only in that month that any laws were passed, legalizing the confiscation of the property of Jews because of their race or religion. However, even though we assume that a German court would have held the transfer unlawful at the time it was made, that would be irrelevant. We have repeatedly declared, for over a period of at least thirty years, that a court of the forum will not undertake to pass upon

the validity under the municipal law of another state of the acts of officials of that state, purporting to act as such. We have held that this was a necessary corollary of decisions of the Supreme Court, and if we have been mistaken, the Supreme Court must correct it." Bernstein v. Van Heyghen Freres Societe Anonyme, 2 Cir., 1947, 163 F.2d 246, 249, certiorari denied 332 U.S. 772, 68 S.Ct. 88, 92 L.Ed. 357.

We think we cannot refuse to apply the Supreme Court's rule to a counterclaim. National City Bank of New York v. Republic of China, 1955, 348 U.S. 356, 75 S.Ct. 423, 99 L.Ed. 389, on which Pons relies, does not support his position. The Supreme Court there allowed the defendant Bank to set off, against China, claims based on defaulted notes of China. The Court said a "chilly feeling against sovereign immunity began to reflect itself in federal legislation in 1797. At that early day Congress decided that when the United States sues an individual, the individual can set off all debts properly due him from the sovereign." 348 U.S. at page 359, 75 S.Ct. at page 426. All the Court did in that case was limit a foreign sovereign's immunity as the domestic sovereign's immunity had been limited for 150 years. In our opinion this does not affect the rule that a foreign sovereign's seizure of its own national's property in its own territory cannot be reviewed in our courts.

On April 13, 1961, we invited the Department of Justice and the Department of State to file briefs, if they should see fit, expressing their views on any issues or questions of interest to them in this case. No briefs have been filed.

Affirmed.

BURGER, Circuit Judge (dissenting).

Our courts have consistently considered themselves bound to recognize the acts of other sovereign states within their own territories even when those acts violated our own concepts of basic fairness and due process. As the majority opinion points out we have gone so far as to recognize the obnoxious decrees

of Nazi Germany expropriating property of German nationals on the basis of racial origins. See Bernstein v. Van Heyghen Freres S.A., 2 Cir., 163 F.2d 246, 249, certiorari denied 1947, 332 U. S. 772, 68 S.Ct. 88, 92 L.Ed. 357.

But I do not think we should carry the act of state doctrine to the point where we permit a foreign state to come into our courts as a suitor and secure equitable relief on better or different terms than those available to an American litigant in the same courts.

Cuba here sought the extraordinary equitable relief of an injunction and an accounting from Pons who, as an agent of Cuba, held property of that country. Pons freely acknowledged the claims of Cuba and has paid the fund into the registry of the court, but he demands that Cuba account to him for his property in its possession. Relying on the act of state doctrine, Cuba insists that our courts accord to it the extraordinary equitable relief it seeks but denies our right to require Cuba to comply with doctrines of equity which would govern an American citizen suing in this court for an accounting.

I would not so far modify the law as to say we will render reciprocal justice to Cuba on the same standards its government-of-the-moment employs, for that would debase any legal system. But I think we should apply to Cuba, or to any other suitor, whether an individual or a sovereign state, all the conditions incident to equitable relief. No citation of authority is required to support the proposition that in a suit for an accounting where the moving party asks the court to settle accounts between the parties, that moving party has the obligation to render an account to the other litigant according to equitable principles. To allow Cuba to withdraw the impounded funds from the jurisdiction of this court without meeting the duty to account to Pons is to decide this case without trying it. At the very least appellant is entitled to require appellee to meet with the formal requirements of an accounting with all impounded funds held intact pending final outcome of the litigation.

"If a sovereign state goes into court seeking its assistance, it is in accord with the best principles of modern law that it should be obliged to submit to the jurisdiction in respect to a set-off or counterclaim properly assertable as a defense in a similar suit between private litigants. * * * Where a sovereign voluntarily litigates, he must play the role of a litigant like any other suitor and abide by the consequences." United States v. National City Bank, 2 Cir., 83 F.2d 236, 238, certiorari denied 1936, 299 U.S. 563, 57 S.Ct. 25, 81 L.Ed. 414.

The majority notes that the United States Departments of State and Justice have not acted on our invitation to file briefs if they or either of them desired. Perhaps that was because they regard this as private litigation for disposition under established principles of the law of equity and not as litigation having any other implications. Cf. National City Bank of New York v. Republic of China, 1955, 348 U.S. 356, 75 S.Ct. 423, 99 L.Ed. 389.

I would remand[1] the case for trial under equitable rules governing accounting suits and hold all funds in the registry of the court until an accounting is made by both litigants under the familiar rules of equity jurisprudence. If that delays indefinitely the settlement of the accounts between the parties that will be by the appellee's choice.

---

1. See illuminating opinion of Judge Edward J. Dimock in Banco Nacional De Cuba v. Sabbatino, D.C.S.D.N.Y., 193 F. Supp. 375.