153 So.2d 40 (1963)
NATIONAL INSTITUTE OF AGRARIAN REFORM, Appellant,
v.
Terry KANE, doing business as Agencio de Tractores y Equipos, S.A., and individually, Terry Kane, H.A. Kane and Louis Kane, as successors to and last Board of Directors of Agencio de Tractores y Equipos, S.A., and as holders of a majority of stock of said inoperative former corporation on behalf of all stockholders thereof, Appellees.
No. 61-827.
District Court of Appeal of Florida. Third District.
May 14, 1963.
*42 Carr & Warren, Sam Daniels, Miami, for appellant.
Charles R. Ashmann, Miami, for appellees.
Before PEARSON, TILLMAN, C.J., and CARROLL and HORTON, JJ.
PEARSON, TILLMAN, Chief Judge.
The National Institute of Agrarian Reform is an arm of the present government of Cuba. It was the defendant in the trial court in an action to recover damages for the expropriation of the assets of a Cuban corporation. The complaint alleged that the defendant-appellant "* * * did take over and seize and confiscate the business, assets, personalty and property, both real, personal and mixed, of your plaintiffs, by armed might, at the point of bayonets, without prior notice or warning of any sort. * * *"
The appellees are citizens of the United States who stated that they were the holders of a majority of the stock in the Cuban corporation. It was further stated that the action was brought on behalf of all the stockholders of the corporation. After finding jurisdiction over the subject matter and the parties, the trial judge granted final judgment for the plaintiffs in a non-jury trial. The defendant appeals this judgment.[1]
Since this litigation involves an arm of the sovereign government of Cuba as the defendant, we must first deal with the effect, if any, of the doctrine of sovereign immunity. Without detailing the various restrictions placed on this doctrine in recent years (none of which negate its use as a defense in the instant case), it prevents a court from entertaining jurisdiction over a foreign state or its property. On first glance, the correct disposition of the case herein discussed would appear to be a dismissal for lack of jurisdiction over the person of the defendant. The doctrine, however, is not self-executing. The procedure for raising a question of sovereign immunity is by making it a subject of diplomatic representation to the United States Department of State; and the claim, if recognized, may be set forth and supported in an appropriate suggestion to the court by the Attorney General of the United States or an officer acting under his direction. Banco Nacional de Cuba v. Steckel, Fla.App. 1961, 134 So.2d 23. The record does not disclose that such action was taken. Therefore, the trial court could not have recognized such a defense, nor can it be considered on appeal. It is to be noted that a suggestion for sovereign immunity from execution was filed in this cause by the Attorney General of the United States subsequent to judgment in the court below. State ex rel. National Institute of Agrarian Reform v. Dekle, Fla. App. 1962, 137 So.2d 581. This, however, is not to be considered an immunity from suit.[2]
Since we have determined that jurisdiction over the person of the defendant existed, we now consider whether or not the trial court had jurisdiction over the subject matter. This requires an analysis of another doctrine of law  the so-called "act of state" doctrine. This doctrine has evolved in the courts whereby these judicial tribunals refuse to question the validity of legislative or executive acts of a foreign government performed within its own borders. See The Castro Government in *43 American Courts: Sovereign Immunity and the Act of State Doctrine, 75 Harv.L.Rev. 1607 (1962). Although application of this doctrine usually involves an immunity extending to property rights which private citizens prove were originally vested in them by acts of the foreign sovereign, the basic reasoning underlying the doctrine would extend its application to a situation in which the sovereign is a party in litigation involving private rights affected by that foreign sovereign's acts.
Appellees would not deny the existence of the act of state doctrine, but seek to avoid its application on three grounds: first, the policies underlying this judicial self-restraint do not apply where the foreign act is a violation of international law; second, it is the proper policy for the courts of this country to refuse to recognize discriminatory confiscation of the property of Americans situated in Cuba; and third, the doctrine does not apply since the Department of State has announced that the effect of the foreign decree is for the court to determine. To support these arguments the appellant relies heavily upon the decision of the United States Court of Appeals for the Second Circuit in Banco Nacional de Cuba v. Sabbatino, 307 F.2d 845 (2nd Cir.1962). At the time that our trial court entered its judgment, it had before it only the opinion in the case by the United States District Court which is reported at 193 F. Supp. 375 (S.D.N.Y. 1961). It is to be noted that the United States Supreme Court has granted certiorari in the matter.
In the Sabbatino case, a New York sugar brokerage firm had contracted to purchase certain sugar from a Cuban corporation, the majority of whose stock was owned by American residents. On the same day the commodity was being loaded for shipment, the Cuban government signed a resolution nationalizing and seizing all of the assets of the Cuban corporation. In order to secure the necessary consent of the Cuban government to ship the sugar, the broker made a second contract to purchase the sugar from the Cuban government. The second contract was assigned to the Banco Nacional. When the broker resold the sugar, a New York State Court awarded the proceeds of the sale to a state receiver appointed to manage the remaining assets of the Cuban corporation which had been nationalized.
The Banco Nacional then brought its action in the United States court against the broker and the receiver, claiming conversion of the bills of lading and the proceeds of the sale. It asserted the act of state doctrine as a bar to any question as to its title. The District Court held the seizure to have been confiscatory and void under international law and entered judgment for the defendants.
Upon appeal, the United States Court of Appeals for the Second Circuit held that the Cuban decree of expropriation violated international law because it failed to provide adequate compensation and because it involved a retaliatory purpose and a discrimination against United States nationals. It held, therefore, that the title of the Banco Nacional to the sugar was invalid and affirmed the decision of the District Court which dismissed the complaint.
We find the Sabbatino opinions persuasive, but not determinative as applied to the facts of the instant case. In the Sabbatino case, the action was by a Cuban bank, an arm of the Cuban government, invoking the aid of a court of the United States to act affirmatively to enforce a foreign decree which was patently obnoxious to the public policy of the forum. If the court had applied the act of state doctrine, this would have been the necessary result. In the case before us, American nationals seek to enforce a claim of conversion in Cuba because of the alleged invalidity of a decree of the Cuban government. There is a recognizable distinction between the refusal to enforce a foreign law which is repugnant to the public policy of the forum [See Loucks v. Standard Oil Co. of N.Y., 224 N.Y. 99, 120 N.E. 198 (1918)] and refusing *44 to pass on the validity under the law of a foreign state of the acts of its officials [See Bernstein v. Van Heyghen Freres Societe Anonyme, 163 F.2d 246 (2nd Cir.1947), cert. denied, 332 U.S. 772, 68 S.Ct. 88, 92 L.Ed. 357 (1947); Pons v. Republic of Cuba, 111 U.S.App.D.C. 141, 294 F.2d 925 (D.C. Cir.1961), cert. denied, 368 U.S. 960, 82 S.Ct. 406, 7 L.Ed.2d 392 (1962). By analogy, we cannot declare the invalidity of a Cuban decree as a basis for creating a right of recovery in the plaintiff in this cause.
The appellees urge that inasmuch as the record in this case contains a telegram to the attorneys for the plaintiffs stating "* * * Effect in U.S. of decrees, etc. of Castro regime is question for court in which case heard", our government does not oppose inquiry by American courts into the legality of the act of the foreign government. It is then argued that this announcement constitutes an exception under which the act of state doctrine should not be applied. We are unable to agree with the effect appellees give to the telegram. The extent to which the telegram can be given effect is simply that the Executive Department of the United States Government will not interpose itself one way or the other in this litigation.
To declare invalid an act of expropriation by the Cuban Government of the property of a Cuban corporation in Cuba because such act is discriminatory, arbitrary and confiscatory would be a denial of the sovereignty of a foreign state. To do so would violate the tradition of judicial reluctance to act in areas of executive prerogative. In the words of one author, it would be "* * * an unnecessary excursion into an area in which the principals of law are elusive, political repercussions are imminent, and pronouncements of a municipal court have little extraterriorial effect save to offend a foreign sovereign." 110 U.Pa.L.Rev. 127 (1961).
While the actions of the Cuban Government may well do injury to the essence of justice as we view it, they are not our acts, nor are we called upon to enforce them. The idea of the seizure of private property without compensation is repugnant both to our constitution and our very way of life, but unfortunately these views are not accorded the same import in all nations. The Supreme Court of the United States has long recognized that the seizure of private property by a foreign government is an exercise of sovereignty. Oetjen v. Central Leather Co., 246 U.S. 297, 38 S.Ct. 309, 62 L.Ed. 726 (1918); Ricaud v. American Metal Co., 246 U.S. 304, 38 S.Ct. 312, 62 L.Ed. 733 (1918).
The highest court of our land has said that "Every sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory." Underhill v. Hernandez, 168 U.S. 250, 18 S.Ct. 83, 42 L.Ed. 456 (1897). This appears to be the law of the land at the present time, and we will not depart from its mandate.
Having found that the trial court lacked jurisdiction of the subject matter, the judgment appealed is reversed and the complaint dismissed.
Reversed.
NOTES
[1] By previous opinion, this Court sustained a plea of sovereign immunity from execution as to the judgment here reviewed. State ex rel. National Institute of Agrarian Reform v. Dekle, Fla.App. 1962, 137 So.2d 581.
[2] In Harris & Co. Advertising, Inc. v. Republic of Cuba, Fla.App. 1961, 127 So.2d 687, we discussed the traditional rule which denies one sovereign the right to sit in court over another sovereign. The holding in the Harris case is not pertinent here since involved there was the doctrine of sovereign immunity (not applicable here as shown above) and the liability of a foreign sovereign to suit for commercial acts performed in this country.