# Third District Court of Appeal

## State of Florida

Opinion filed July 2, 2014.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D13-1753
Lower Tribunal No. 09-34950
_____

**The Republic of Ecuador,**
Appellant,

vs.

**Roberto Isaias Dassum and William Isaias Dassum,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, John W. Thornton, Judge.

Squire Sanders and Alvin B. Davis and Digna B. French and Rafael Langer-Osuna, for appellant.

Lewis Tein; Kula & Samson, and Elliot Kula, for appellees.

Before WELLS, ROTHENBERG and SALTER, JJ.

SALTER, J.

The Republic of Ecuador (Republic) appeals a final summary judgment in

favor of two former bankers from Ecuador now living in Miami, brothers Roberto

Isaias and William Isaias. The legal issue is whether the extraterritoriality exception to the act of state doctrine bars the Republic's claims in Florida to recover some $200 million in alleged damages following the failure of Ecuador's (formerly) largest bank, Filanbanco.

We reverse and remand, concluding that: (1) the record demonstrates genuine issues of fact regarding the allegedly-remaining indebtedness of the Isaiases to the Republic; and (2) the Republic's complaint seeking remedies in Florida is not based, as argued by the Isaiases, on a "confiscatory decree of a foreign sovereign . . . acting beyond its territorial dominion."[1]

The Proceedings in Ecuador

The Isaiases owned and controlled two Panamanian entities which were the shareholders of Filanbanco. In 1998, Filanbanco experienced a liquidity crisis as part of a widespread national financial crisis. Ecuador's legislature established the Agencia de Garantia de Depositos ("AGD"), an agency similar to the Federal Deposit Insurance Corporation in the United States. By mid-2001, the AGD had injected over $1.16 billion[2] into Filanbanco in an effort to help the bank recover stability and to protect its depositors.

Filanbanco engaged the international accounting firm of Deloitte & Touche (Deloitte) to determine the extent and causes of the bank's massive losses. In May

---

[1] Order Granting Defs.' Mot. Summ. J. at 8.
[2] All amounts in this opinion are expressed in United States dollars.

2

2001, Deloitte issued a written report to the Republic's national superintendent of financial institutions concluding that depositors' losses (as of December 1998) were at least $661.5 million. Filanbanco was forced to close, and Article 29 of the AGD law imposed liability on the Isaiases (jointly and severally) for the losses. The Republic concluded that the Isaiases had drained the bank's funds through fraudulent misconduct. In 2003, Ecuador issued arrest warrants for the Isaiases, who were by then in Miami.[3]

In February 2008, the Republic's banking authority issued Resolution Number JB-2008-1084 (Resolution 1084), authorizing the approval and delivery of the Deloitte report to the AGD. The AGD then pursued the assets of the Isaiases in Ecuador to recover and sell them, thereby reducing the allegedly outstanding liability of the Isaiases to the Republic. As of April 2009, the AGD alleged that it had recovered and sold approximately $400 million of such assets in Ecuador to be applied in reduction of the claimed $661.5 million indebtedness of the Isaiases.

The Florida Lawsuit

In April 2009, the AGD[4] sued the Isaiases in circuit court in Miami, alleging that the Isaiases reside in Miami and have at least $20 million in property here. The complaint seeks to collect the Isaiases' allegedly-remaining liabilities of

[3] Ecuador requested extradition of the Isaiases to Ecuador, but the request has not been granted so far as the record reflects.

[4] In 2010, the Republic of Ecuador itself was substituted for AGD as the party plaintiff.

approximately $200 million. The prayer for relief in the complaint "demands judgment . . . for damages, interest, and such further relief that the Court may deem just and proper." The Republic's complaint does not demand that the circuit court summarily seize any of the Isaiases' property in Florida or transfer title to any such property to the Republic.

The Isaiases counterclaimed for a declaratory judgment that the AGD orders were illegal and improper under the law of Ecuador. The trial court determined that those orders represented governmental actions taken within Ecuador and granted the Republic's motion for summary judgment based on the act of state doctrine. Similarly, sixteen entities which had an interest in some of the assets seized and sold in Ecuador by the AGD for application to the alleged indebtedness of the Isaiases sought to intervene in the Florida lawsuit for a declaratory judgment that the seizure orders were illegal. The trial court dismissed the intervenors' complaint on grounds that the Florida claims of the intervenors related exclusively to sovereign actions of the Republic within its own borders, and were thus barred by the Foreign Sovereign Immunities Act[5] and the act of state doctrine.

In March 2013, the Isaiases moved for final summary judgment against the Republic on the claims asserted by the Republic in its Florida complaint. The primary basis for the Isaiases' motion was the extraterritoriality exception to the

---

[5] 28 U.S.C. §§ 1602-1611.

4

act of state doctrine.  The trial court granted that motion, and this appeal followed.

Analysis

The act of state doctrine is a judicially-created principle of international comity; the courts of Florida and the United States will presumptively defer to governmental acts (whether we might characterize them as executive, legislative, or judicial) taken within the territory of another sovereign nation.  Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 401 (1964); Nat'l Inst. of Agrarian Reform v. Kane, 153 So. 2d 40, 42 (Fla. 3d DCA 1963).  The doctrine gives effect to the primacy of the executive branch of our own federal government in the conduct of international relations with other countries.

The governmental acts to which we ordinarily defer include actions of the executive branch of a foreign government—such as the AGD in the present case—which determine an indebtedness and direct the seizure of assets within that country in partial or full satisfaction of that indebtedness.  But the courts of this country have also been receptive to claims asserted by foreign governments to recover for acts in a foreign country by alleged wrongdoers (officials from a prior administration or regime) who subsequently took up residence here with ill-gotten gain.  Republic of Philippines v. Marcos, 806 F.2d 344, 360 (2d Cir. 1986) ("The complaint seeks recovery of property illegally taken by a former head of state, not confiscation of property legally owned by him.").[6]

5

The act of state doctrine and our deference do not extend to sovereign acts of a foreign government purporting to seize, summarily, property within the United States. This "extraterritoriality exception" to the doctrine requires us to exercise our own jurisdiction and to determine whether the foreign sovereign's claim against the assets here amounts to a "taking" contrary to United States policy and the fifth and fourteenth amendments to our Constitution. Bandes v. Harlow & Jones, Inc., 852 F.2d 661, 667 (2d Cir. 1988); Republic of Iraq v. First Nat'l City Bank, 353 F.2d 47, 51 (2d Cir. 1965).

In the present case, the Republic's complaint does not identify any act of the government of Ecuador summarily seizing or confiscating any property of the Isaiases in Miami-Dade County, the State of Florida, or the United States. Rather, the complaint alleges that Filanbanco is in liquidation and that Resolution 1084 has authorized the AGD to "initiate all legal actions" against any persons obligated by law to reimburse the AGD for the amounts advanced to depositors and other creditors of Filanbanco. The Republic's Florida complaint alleges that: the Isaiases were found by Deloitte (in a report then approved by Ecuador's banking authorities), to be liable to the AGD for $661.5 million; the AGD seized in

---

[6] In cases such as Marcos, a successor foreign government alleges that a predecessor official's property or funds in the United States represent proceeds of an embezzlement or other wrongful acts in the foreign country. No specific "tracing" or "fruits of the crime" allegations are made in the complaint against the Isaiases, but the complaint alleges that the Isaiases are liable to the Republic for the Isaiases' acts and omissions regarding Filanbanco.

6

Ecuador over $400 million in assets of the Isaiases in reduction of that liability; and the AGD has been authorized to pursue the balance of the liability through litigation against the Isaiases in Miami-Dade County. The prayer for relief in the complaint seeks a judgment for money damages for the unrecovered net amount allegedly remaining due from the Isaiases, jointly and severally, "and such other relief that the Court may deem just and proper."

This complaint is in stark contrast to a hypothetical complaint demanding the enforcement in Florida of a foreign sovereign's confiscation of property located in Florida, as a judicial fait accompli, all in purported reliance on the act of state doctrine. Such a demand plainly would be subject to the extraterritoriality exception to the doctrine, as in Republic of Iraq.

The order granting summary judgment in the present case was based on an erroneous predicate advanced by counsel for the Isaiases, who characterized the Florida complaint as an effort to "seize the [Isaiases'] property in the U.S" through an "executive fiat" within Ecuador. In fact, however, the complaint seeks a judgment for money damages which, if further proceedings warrant, could only then be used to execute upon property in the United States. The Isaiases are not precluded from opposing the entry of such a judgment in Miami-Dade County by asserting their defenses and affirmative defenses at trial.

Nor does the Republic's complaint in Florida allege that the computations of

7

liability in Ecuador must be given preclusive effect by the circuit court here. The governmental resolutions establishing the Isaiases' alleged liability (and reductions in that alleged liability following recoveries in Ecuador) are neither "out-of-country foreign money-judgments" eligible for recognition and enforcement under sections 55.601-.607, Florida Statutes (2009),[7] nor foreign decrees subject to the more expansive principle of international comity described in <u>Nahar v. Nahar</u>, 656 So. 2d 225 (Fla. 3d DCA 1995).

The Isaiases did not make a conclusive showing in the circuit court that the actions by the banking authorities and Deloitte in Ecuador were confiscatory acts strictly based on politics, revolution, or regime change. The Isaiases have not provided, on this record, summary judgment evidence under Florida Rule of Civil Procedure 1.510(c) that the Republic's claims of misapplication and misrepresentation, and the Deloitte report, for example, are pretextual or even factually incorrect. On the record presented, the Isaiases had the opportunity to present information to the banking authorities (and on at least some occasions, took advantage of that opportunity)[8] in Ecuador both before and after the issuance

---

[7] The terms "judgment" and "foreign court," used repeatedly within Florida's Uniform Out-of-country Foreign Money-Judgment Recognition Act, make it clear that the Republic's banking authority's resolutions at issue in the present case would not be eligible for recognition under the Act.

[8] Although the order granting the motion for summary judgment characterizes the Republic's complaint as "an attempt to enforce a non-judgment finding of liability," the Isaiases have not shown that the "non-judgment" findings by Deloitte and the Republic's banking authorities are fabrications or even erroneous.

8

of the Deloitte report and before and after they moved to Miami.

Simply stated, the Republic claims to be a creditor with a claim for money damages against the Isaiases based on their allegedly wrongful acts and omissions in Ecuador. The validity and extent of any such claim are subject to proof as in any claim by a foreign sovereign against one of its citizens residing in the United States. The Florida trial court is not obligated to give preclusive effect to the findings of Deloitte and the AGD, and it will not interfere with the Republic's sovereignty or the foreign relations of the United States if the Florida court rules for or against the Republic's claims here in Florida after considering the proof put forward by the Republic.

Conclusion

We reverse and remand the final summary judgment in favor of the Isaiases for further proceedings. The existing complaint is not barred as a matter of law as an attempt to obtain summary recognition of acts of state in Ecuador that "seize" or "confiscate" property of the Isaiases in Miami-Dade County. There are genuine issues of material fact that remain in dispute regarding (1) the Isaiases' allegedly-remaining indebtedness to the Republic, and (2) the entitlement of the Republic to the entry of a judgment here against the Isaiases for money damages. The Isaiases have not demonstrated on this record that the Republic has no facts or legal basis upon which it may prove its claims.

9

Reversed and remanded for further proceedings.