## UNDERHILL *v.* HERNANDEZ.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 36. Argued October 22, 25, 1897. — Decided November 29, 1897.

Hernandez was in command of a revolutionary army in Venezuela when an engagement took place with the government forces which resulted in the defeat of the latter, and the occupation of Bolivar by the former. Underhill was living in Bolivar, where he had constructed a waterworks system for the city under a contract with the government, and carried on a machinery repair business. He applied for a passport to leave the city, which was refused by Hernandez with a view to coerce him to operate his waterworks and his repair works for the benefit of the community and the revolutionary forces. Subsequently a passport was given him. The revolutionary government under which Hernandez was acting was recognized by the United States as the legitimate government of Venezuela. Subsequently Underhill sued Hernandez in the Circuit Court for the Second Circuit to recover damages caused by the refusal to grant the passport, for alleged confinement of him to his own house, and for alleged assaults and affronts by Hernandez' soldiers. Judgment being rendered for defendant the case was taken to the Circuit Court of Appeals, where the judgment was affirmed, the court holding " that the acts of the defendant were the acts of Venezuela, and as such are not properly the subject of adjudication in the courts of another government." *Held* that the Circuit Court of Appeals was justified in that conclusion.

Every sovereign State is bound to respect the independence of every other sovereign State, and the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory.

In the early part of 1892 a revolution was initiated in Venezuela against the administration thereof, which the revo-

lutionists claimed had ceased to be the legitimate government. The principal parties to this conflict were those who recognized Palacio as their head and those who followed the leadership of Crespo. General Hernandez belonged to the anti-administration party, and commanded its forces in the vicinity of Ciudad Bolivar. On the 8th of August, 1892, an engagement took place between the armies of the two parties at Buena Vista, some seven miles from Bolivar, in which the troops under Hernandez prevailed, and on the 13th of August, Hernandez entered Bolivar and assumed command of the city. All of the local officials had in the meantime left, and the vacant positions were filled by General Hernandez, who from that date and during the period of the transactions complained of was the civil and military chief of the city and district. In October the party in revolt had achieved success generally, taking possession of the capital of Venezuela, October 6, and on October 23, 1892, the Crespo government, so called, was formally recognized as the legitimate government of Venezuela by the United States.

George F. Underhill was a citizen of the United States, who had constructed a waterworks system for the city of Bolivar under a contract with the government, and was engaged in supplying the place with water, and he also carried on a machinery-repair business. Some time after the entry of General Hernandez, Underhill applied to him as the officer in command for a passport to leave the city. Hernandez refused this request, and requests made by others in Underhill's behalf, until October 18, when a passport was given and Underhill left the country.

This action was brought to recover damages for the detention caused by reason of the refusal to grant the passport; for the alleged confinement of Underhill to his own house; and for certain alleged assaults and affronts by the soldiers of Hernandez' army.

The cause was tried in the Circuit Court of the United States for the Eastern District of New York, and on the conclusion of plaintiff's case, the Circuit Court ruled that upon the facts plaintiff was not entitled to recover, and directed

a verdict for defendant on the ground that "because the acts of defendant were those of a military commander, representing a *de facto* government in the prosecution of a war, he was not civilly responsible therefor." Judgment having been rendered for defendant, the case was taken to the Circuit Court of Appeals, and by that court affirmed upon the ground "that the acts of the defendant were the acts of the government of Venezuela, and as such are not properly the subject of adjudication in the courts of another government." 26 U. S. App. 573. Thereupon the cause was brought to this court on certiorari.

*Mr. Walter S. Logan* for Underhill. *Mr. Charles M. Demond* was on his brief.

*Mr. Frederic R. Coudert, Jr.,* for Hernandez. *Mr. Joseph Kling* was on his brief.

Mr. Chief Justice Fuller, after stating the case, delivered the opinion of the court.

Every sovereign State is bound to respect the independence of every other sovereign State, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory. Redress of grievances by reason of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves.

Nor can the principle be confined to lawful or recognized governments, or to cases where redress can manifestly be had through public channels. The immunity of individuals from suits brought in foreign tribunals for acts done within their own States, in the exercise of governmental authority, whether as civil officers or as military commanders, must necessarily extend to the agents of governments ruling by paramount force as matter of fact. Where a civil war prevails, that is, where the people of a country are divided into two hostile parties, who take up arms and oppose one another by military

force, generally speaking foreign nations do not assume to judge of the merits of the quarrel. If the party seeking to dislodge the existing government succeeds, and the independence of the government it has set up is recognized, then the acts of such government from the commencement of its existence are regarded as those of an independent nation. If the political revolt fails of success, still if actual war has been waged, acts of legitimate warfare cannot be made the basis of individual liability. *United States* v. *Rice,* 4 Wheat. 246; *Fleming* v. *Page,* 9 How. 603; *Thorington* v. *Smith,* 8 Wall. 1; *Williams* v. *Bruffy,* 96 U. S. 176; *Ford* v. *Surget,* 97 U. S. 594; *Dow* v. *Johnson,* 100 U. S. 158; and other cases.

Revolutions or insurrections may inconvenience other nations, but by accommodation to the facts the application of settled rules is readily reached. And where the fact of the existence of war is in issue in the instance of complaint of acts committed within foreign territory, it is not an absolute prerequisite that that fact should be made out by an acknowledgment of belligerency, as other official recognition of its existence may be sufficient proof thereof. *The Three Friends,* 166 U. S. 1.

In this case, the archives of the State Department show that civil war was flagrant in Venezuela from the spring of 1892; that the revolution was successful; and that the revolutionary government was recognized by the United States as the government of the country, it being, to use the language of the Secretary of State in a communication to our minister to Venezuela, "accepted by the people, in the possession of the power of the nation and fully established."

That these were facts of which the court is bound to take judicial notice, and for information as to which it may consult the Department of State, there can be no doubt. *Jones* v. *United States,* 137 U. S. 202; *Mighell* v. *Sultan of Jahore,* (1894) 1 Q. B. 149.

It is idle to argue that the proceedings of those who thus triumphed should be treated as the acts of banditti or mere mobs.

We entertain no doubt upon the evidence that Hernandez

was carrying on military operations in support of the revolutionary party. It may be that adherents of that side of the controversy in the particular locality where Hernandez was the leader of the movement entertained a preference for him as the future executive head of the nation, but that is beside the question. The acts complained of were the acts of a military commander representing the authority of the revolutionary party as a government, which afterwards succeeded and was recognized by the United States. We think the Circuit Court of Appeals was justified in concluding "that the acts of the defendant were the acts of the government of Venezuela, and as such are not properly the subject of adjudication in the courts of another government."

The decisions cited on plaintiff's behalf are not in point. Cases respecting arrests by military authority in the absence of the prevalence of war; or the validity of contracts between individuals entered into in aid of insurrection; or the right of revolutionary bodies to vex the commerce of the world on its common highway without incurring the penalties denounced on piracy; and the like, do not involve the questions presented here.

We agree with the Circuit Court of Appeals, that "the evidence upon the trial indicated that the purpose of the defendant in his treatment of the plaintiff was to coerce the plaintiff to operate his waterworks and his repair works for the benefit of the community and the revolutionary forces," and that "it was not sufficient to have warranted a finding by the jury that the defendant was actuated by malice or any personal or private motive;" and we concur in its disposition of the rulings below. The decree of the Circuit Court is

*Affirmed.*