RICARDO MOLINA, PLAINTIFF, v. COMISION REGULADORA
DEL MERCADO DE HENEQUEN, DEFENDANT.

Argued June 22, 1918—Decided July 17, 1918.

1. The rule that our courts will not sit in judgment on the validity
   of the acts of another independent government, done within its
   own territory, does not, however, deprive the courts of jurisdic-
   tion, once acquired, over the case. It requires only that when
   it is made to appear that the foreign government has acted in a
   given way on the subject-matter in litigation, the details of such
   action or the merit of the result cannot be questioned, but must
   be accepted by our courts as a rule for their decision.

2. Where the claim of the defendants in an attachment suit is a
   claim of right not shown by documents which the court can
   construe, but shown by facts and certain acts of a foreign govern-
   ment, the effect of which and the inference to be drawn there-
   from are proper for inquiry by a jury, a motion to strike out the
   complaint, based upon such defence, will be denied.

On motion to strike out complaint.

Before Justice SWAYZE.

For the defendant, *Nelson S. Spencer, Otto C. Wierum, Jr.*
(of New York), and *Robert H. McCarter.*

For the plaintiff, *William Bradford Roulstone* (of New
York) and *Robert S. Hudspeth.*

The opinion of the court was delivered by

SWAYZE, J. After the denial of the motion to dissolve the
attachment in this case (91 *N. J. L.* 382), the defendant
obtained leave to move to strike out the complaint, and to take
testimony with that in view. This motion is now before me.

It is unnecessary to go into the evidence in detail. I am
satisfied that on April 15th, 1915, the revolutionary authori-
ties in Yucatan took proceedings against the property of the
present plaintiff. These revolutionary authorities were acting
under General Carranza; and their action was subsequently

recognized by his government as early as 1916. The Carranza government had then been recognized by the United States (on October 19th, 1915), as the *de facto* government in Mexico; it has since been recognized (on August 31st, 1917), as the *de jure* government; and the recognition by the United States is retroactive in effect, and validates all the actions and conduct of the government so recognized from the commencement of its existence. *Oetjen* v. *Central Leather Co.,* 246 *U. S.* 297.

It is settled by the decisions in that case and in *Ricaud* v. *American Metal Co.,* 246 *U. S.* 304, that our courts will not sit in judgment on the validity of the acts of another independent government done within its own territory. It is, therefore, unnecessary to inquire whether the action taken by the revolutionary authorities of Yucatan against Molina's property was legal or not. It was effective under the existing circumstances of revolution; and the only question for this court is what the action was. The answer depends in the first instance, upon the construction of two documents: (1) the decree (to call it by that name) of General Alvarado, of April 15th, 1915; and (2), his instructions to Andres Barera, dated April 16th, 1915. Subsequent acts are important as showing that the Mexican government recognized, and, so to speak, took over the action of the Yucatan government, and that the decree of April 15th applied to Mr. Molina. The decree of April 15th does not mention Molina's name; but it is sufficiently proved that he was one of the class of persons therein referred to. The decree prevented him from selling, mortgaging or alienating his property, and, in itself, went no further.

The instructions to Barera the next day are more specific. Their force and effect is to be determined by the quotation therein contained from the order issued by General Alvarado to Alvarez, representative of Molina, which was embodied in the instructions to Barera evidently to define the scope of those instructions.

On these documents the defendant relies.

The case shows clearly that they amounted to what is called by the defendant a sequestration of Molina's property. The case does not turn upon the proper or the improper translation of words; nor does it depend at all upon the use of the word "sequestration" by the defendant. It depends upon the acts of the parties, and the authority given.

The announcement, as it is called, to Alvarez, which is set forth in the order to Barera, states that the government has resolved to sequester the properties of Molina with the purpose of beginning the investigation of the civil and penal responsibilities which the state will exact. It was, then, a sequestration at the beginning of a proceeding, call it judicial or not. It was a sequestration by way of mesne process, and not by way of final process; for evidently, before Molina's title could be divested under the proceeding, there was meant to be some investigation. This investigation was had, and Molina was found to come within the class of persons whose property was to be sequestered. The rights that passed by the sequestration were such rights as would pass upon a sequestration by way of mesne process under our law; those rights are rights of custody only, and not of title. It has been held that on such a sequestration under our law a sale may be ordered by the court of certain kinds of property, including the produce of a farm. *Shaw* v. *Wright,* 3 *Ves. Jr.* 22; *Goldsmith* v. *Goldsmith,* 5 *Hare* 123. Where a government has sequestered property no doubt it also may order a sale. But speaking generally, the position of sequestrators is that of custodians only.

That this was the nature of the procedure in the present case is shown by the express limitation upon the authority given to Alvarez, as the representative of Molina. He is ordered to abstain as long as the sequestration lasts, from disposing in any way of Molina's property under his strictest responsibility to the government. This prevented any sale by him; and there is no suggestion of any sale by the government or its agents. That is excluded by the fact that investigation was to be made before Molina was condemned. Alvarez is also told by the order of General Alvarado that

this does not deprive him of the administration of such properties; that he must give an account of it to the provisional superintendent and controller, Andres Barera. The subsequent papers, especially the detailed report of July 12th, 1916, from the director general of sequestered property, show that it was the policy of the government to keep the administrator's staff, which was officiating, in control of the sequestered property, for the very obvious reason that in that way the property would be made very much more productive.

It is clear that under the order of April 16th to Barera, he was not to have the actual management of the property, but to receive the accounts of the administration by Alvarez, Molina's own representative. It is quite likely that the administration later involved the turning of the property, or the proceeds of the land, into cash, notwithstanding the express prohibition in General Alvarado's order to Alvarez; and it may be, and I think it probable, that the accounting by Alvarez to Barera involved not merely a statement of account, but the actual turning over of proceeds of sales if any were subsequently permitted, and it is possible that Alvarez, as the recognized representative of Molina confided with the administration of Molina's property by General Alvarado himself, subsequently was permitted to sell the produce of the farm and to pass a good title thereto. This, however, is not the claim of the defendant. Such a claim would not avail on this motion since in the absence of an express order for sale, it involves inferences to be drawn by a jury from facts proved. The defendant's present claim is that in some way and at some time the revolutionary government had power to sell and pass a title to the crops of henequen. The evidence makes it probable that that was the situation at least as to a part of the crops; but as counsel for · the plaintiff well argued, in order that the defendant may prevail upon the present motion it must show not only that there was authority to sell part of the crops, but that there was authority to sell all; for if the title to any part of the henequen converted by the present defendant was im-

perfect, this action can be maintained, although the amount of damages might be less. Probably this is the true situation. Considerable time elapsed before the Mexican government took over the revolutionary government of Yucatan, the administration of the sequestered estate. Nieto testifies that the general manager in the republic was first appointed about the end of 1915. It may well be that the revolutionary government of Yucatan would not, or could not, take the responsibility of parting with the property without the action of the Mexican government. If so, there was in the meantime no one authorized to sell the henequen. It was impounded, but not yet forfeited or condemned, if in fact it ever was.

The motion to dismiss the complaint must be denied unless I am required to grant it because both plaintiff and defendant are citizens of Yucatan and the wrong complained of was committed there. I know of no such rule in New Jersey; and the cases cited by counsel from the New York courts, to which I have had access, do not sustain his position. On the contrary, the first case cited, *Robinson* v. *Oceanic Steam Navigation Co.*, 112 *N. Y.* 315, quotes *McCormick* v. *Penna. Central Railroad Co.*, 49 *Id.* 303, to the contrary; and calls attention to the fact that the then pending case was governed by the Code of Civil Procedure enacted after the decision of the McCormick case. We have no such statute as required the decision reached by the New York Court of Appeals in Robinson *v.* Oceanic Steam Navigation Co.

*Latourette* v. *Clark*, 30 *How. Pr.* 242, is said in *Burdick* v. *Freeman*, 120 *N. Y.* 420, to be regarded as overruled; and in the latter case the court did take jurisdiction although it said that the Supreme Court might in its discretion have refused to entertain the action. This is far from holding that there is a lack of jurisdiction in such a case.

*Hoes* v. *N. Y. & N. H. & H. R. Co.*, 173 *N. Y.* 435, comes nearer being in point, but the ground of decision there was, as the court said, that it presented a case of collusion and legal fraud.

I have not felt called upon to examine the other New York cases referred to, which were decided by inferior courts.

Even the case of *Dewitt* v. *Buchanan,* 54 *Barb.* 31, cited in defendant's brief, implies that special reasons may justify an action by a non-resident plaintiff against a non-resident defendant for an injury happening abroad. Such a special reason exists in this case, where the proceeding is *in rem* to reach property attached in our jurisdiction.

Even if counsel for the defendant are right in their contention that the henequen said to have been converted by the defendant had all of it been sold to the defendant by the authority of the government of Mexico or of Yucatan, it would not be my duty to dismiss the complaint. The rule was stated by the United States Supreme Court in Ricaud *v.* American Metal Co. Justice Clarke for the court says that the rule that the courts of one independent government will not sit in judgment on the validity of the acts of another done within its own territory, does not deprive the courts of jurisdiction once acquired over the case. It requires only that when it is made to appear that the foreign government has acted in a given way on the subject-matter of the litigation, the details of such action or the merit of the result can not be questioned, but must be accepted by our courts as a rule for their decision. To accept a ruling authority and to decide accordingly is not a surrender or abandonment of jurisdiction, but an exercise of it. The Supreme Court in that case in fact, decided the question upon the merits; as it had also previously decided the case of *Underhill* v. *Hernandez,* 168 *U. S.* 250. In the case of the *American Banana Co.* v. *United Fruit Co.,* 213 *Id.* 347, it is true that the action of the court was a dismissal of the complaint; but it was after a trial upon the merits, not on a mere preliminary motion. The action taken was equivalent to the direction of a verdict under our practice after all the evidence is in; and the defendant would be swift if a verdict should be directed in its favor to call attention to the difference in the legal effect of a judgment thereon, and the mere dismissal of the

complaint.    Moreover, if I understand the case, the claim of the defendant is a claim of right not shown by documents which the court must construe, but shown by facts, by acts of the revolutionary authorities, or the Mexican government, the effect of which and the inferences to be drawn therefrom, are the proper subjects of inquiry by a jury, as well as the date upon which the alleged right to sell accrued.

The present motion is denied, with costs.