BANCO DE LA LACUNA, Plaintiff, *v.* JOSE G. ESCOBAR and Others, Defendants.

Supreme Court, New York County, August 1, 1929.

*Alley & Geer*, for the plaintiff.

*David P. Siegel [Leo H. Klugherz, Sanford H. Markham* and *Sidney Handler* of counsel], for the defendants.

COTILLO, J.   This action is founded upon an attachment obtained by the plaintiff, a banking corporation of Mexico, against four non-resident defendants, only two of whom have been served, namely, Salvador Ateca and Antonio Gomez Maquero.   The defendants who have been served move to dismiss the action on the ground of lack of jurisdiction and to vacate the attachment on the ground that the papers are insufficient.   Plaintiff in turn moves for leave to file additional papers in support of the attachment, including an amended complaint.

The action arises out of a recent revolutionary condition in Mexico.   In the course of that insurrection, defendant Escobar, as general in command, seized the city of Torreon, Mexico, and requisitioned the sum of $168,000 from the plaintiff bank, issuing therefor his receipt.   The two defendants served here are alleged to be the paymaster of the Revolutionary army and his secretary.

Funds largely in excess of $168,000, but not earmarked, were found in the possession of the defendant Ateca in New York city, and attachment levied upon them to the extent of the claim.   The complaint sounds in tort and alleges a conspiracy on the part of the four defendants to overthrow the constituted government of Mexico; that in furtherance of such conspiracy the defendant Escobar and his agents seized or requisitioned the sum of $168,000, or its equivalent in Mexican money, from the plaintiff bank; that defendant Ateca is and at all the times herein mentioned was the paymaster of the Revolutionary forces in connection with the conspiracy and revolution herein referred to.   It is further alleged

that the revolution has never been recognized by the United States government and has since been suppressed; and that plaintiff has been damaged in the sum of $168,000, for which it demands judgment.

At the outset it should be said that no cause of action is stated against Maquero, even under the most liberal construction of the amended complaint. It is true, as said in *Slater* v. *Mexican National R. R. Company* (194 U. S. 120, 126), that the general and almost universal rule is that the character of an act as lawful or unlawful must be determined wholly by the law of the country where the act is done. On the other hand, the courts of an American jurisdiction will not take cognizance of mere acts of Mexican or other nationals to conspire to overthrow their own governments, and this is the sole wrong alleged against Maquero.

The basis of the alleged actionable wrong, however, as against Escobar and Ateca at least, seems to be that they participated in the commission of an act of larceny against the plaintiff. It is unnecessary to consider the responsibility of Escobar, because he is not before the court. We are, therefore, limited to a consideration of the liability of defendant Ateca for the alleged larceny or conversion of the property belonging to the plaintiff. At the outset, it is doubtful whether under the settled principles of international law, as expounded in *Underhill* v. *Hernandez* (168 U. S. 250, 252), the courts of this country should take cognizance of acts done under military authority in a foreign country. As is said in that case: " Where a civil war prevails, that is, where the people of a country are divided into two hostile parties who take up arms and oppose one another by military force, generally speaking foreign nations do not assume to judge of the merits of the quarrel. If the party seeking to dislodge the existing government succeeds, and the independence of the government it has set up is recognized, then the acts of such government from the commencement of its existence are regarded as those of an independent nation. *If the political revolt fails of success, still if actual war has been waged, acts of legitimate warfare cannot be made the basis of individual liability. United States* v. *Rice,* 4 Wheat. 246; *Fleming* v. *Page,* 9 How. 603; *Thorington* v. *Smith,* 8 Wall. 1; *Williams* v. *Bruffy,* 96 U. S. 176; *Ford* v. *Surget,* 97 U. S. 594; *Dow* v. *Johnson,* 100 U. S. 158; and other cases." (Italics mine.)

There is nothing in *Oetjen* v. *Central Leather Co.* (246 U. S. 297) in conflict with this doctrine. In that case the decision was limited to the scope of the facts therein contained, namely, the recognition of the belligerent faction, and nothing was said to override the proposition laid down in the italicized portion of the quotation.

It is true that the amended complaint speaks of the " pretended military requisition." This is an attempt to negative the idea of an organized revolution, and to imply an act of banditry; but the affidavits in support of the attachment rebut any such presumption. However, even assuming that there was no proof of the existence of an organized revolution, nevertheless the papers fail to charge the defendant Ateca with an actionable wrong. The alleged tort was committed in Mexico, and its tortious character must be measured by the laws of that country. (See *Slater* v. *Mexican National Railway Co.*, *supra*, where it is said: " It seems to us unjust to allow a plaintiff to come here absolutely depending on the foreign law for the foundation of his case, and yet to deny the defendant the benefit of whatever limitations upon his liability that law would impose.")

The affidavits in support of the attachment, together with the supplementary affidavits, show no participation of the defendant Ateca in the actual requisition. While he is called the paymaster of the revolution, it affirmatively appears by plaintiff's own moving papers that the moneys requisitioned were turned over by Escobar to another paymaster who is in no wise shown to have been connected with this defendant. The only connection alleged and shown between Escobar, the man who actually requisitioned the funds, and this defendant is that they were all participators in a general revolutionary conspiracy. It would be a far-fetched doctrine to hold every member of an insurrectionary force for all the crime committed in the name of the revolution. Such a rule would hold every revolutionary responsible for murder, theft and other unlawful acts, even though they were committed without his knowledge, privity or consent. Such a startling doctrine is expressly discountenanced by the laws of Mexico.

Article 51 of the Mexican Federal Penal Code provides that:

" If several persons concur in the execution of a determined crime and one of the delinquents commits a different crime without previous consent of the other, the latter will be entirely free of responsibility for the unconcerted crime, provided the following four requisites are fulfilled:

" 1. That the new crime will not be adequate means to commit the principal one.

" 2. That the later will not be a necessary or natural consequence of the former or of the already accepted means.

" 3. That they have not been aware before that a new crime was going to be committed.

" 4. That being present at the execution of said crime they have

done whatever was in their power to prevent it, provided that they could do that without grave and immediate risk to their persons."

No proof has been submitted under any one of these subdivisions to connect the defendant Ateca with the alleged larceny of Escobar or his tortious conversion of the plaintiff's funds.

Affidavits and papers have been submitted by defendant Ateca to show his good character and his high standing in Mexico, and to indicate the presence in Mexico of properties amply sufficient to compensate the plaintiff. While these allegations to a large extent are unnecessary, they indicate that no serious injustice will be done to plaintiff and it will be deprived of no adquate remedy by the vacating of this attachment. To this extent those papers may possibly have some bearing upon this motion.

We come now to the second motion of defendants, to dismiss the action on the ground of lack of jurisdiction. To a certain extent the determination of this motion is perhaps unnecessary. Nevertheless, it is of interest, because of the point raised by the plaintiff that defendant has appeared generally in the action. The circumstances under which such appearance was entered negatives the idea of a voluntary submission to the jurisdiction. The defendant Ateca had lost the papers served on him and the present attorney whom he engaged could obtain no copy of the papers unless he furnished plaintiff's attorneys with a notice of appearance. It may perhaps be said in vindication of the refusal of plaintiff's attorneys to furnish another set of papers that they desired to make certain, in asking for this notice of appearance, that the attorney was really acting with the authority of the defendant. In any event, all the circumstances indicate a lack of intent on the part of the defendant to enter a general appearance. The various orders signed upon the stipulations of the parties in the course of the preliminary stages do not constitute a voluntary submission to the jurisdiction. This being so, defendant's motion to dismiss for lack of jurisdiction can be considered upon the merits without regard to the alleged element of waiver of this objection.

At this point it may be pertinent to refer to the following comments in *Robinson* v. *Oceanic Steam Nav. Co.* (112 N. Y. 315, 324): " Jurisdiction of the action cannot be conferred upon the court by any consent or stipulation of the parties. The objection to the jurisdiction in such case may be taken at any stage of the action, and the court may, *ex mero motu*, at any time, when its attention is called to the facts, refuse to proceed further and dismiss the action."

The courts of this State are loath to take jurisdiction in actions between non-residents upon torts committed outside of this State.

In the exercise of a sound discretion they may entertain such jurisdiction where the necessities of the case dictate such a policy, as for example where torts arise out of commercial transactions (*Wertheim* v. *Clergue*, 53 App. Div. 124), but no such necessity and no such situation obtains here. The court feels that both considerations of policy as well as the true interests of the parties dictate the pursuit of the litigation in the home forum and not in this jurisdiction.

On consideration of all the papers, including the supplementary ones, submitted by both parties, the motion to vacate the attachment and the motion requesting the court to decline to entertain jurisdiction are both granted. Settle order on one day's notice.