Louisa B. Gunther Farcasanu, Petitioner $v$. Commissioner of Internal Revenue, Respondent

Docket No. 3533–62.   Filed September 17, 1968.

*Bartholomew B. Coyne*, for the petitioner.
*Charles F. T. Carroll*, for the respondent.

888

## OPINION

KERN, *Judge:* It is the position of the petitioner herein that certain of her property was left in Rumania in 1947 with friends who were opposed to the Communist regime in that country, that this property was thereafter confiscated by agents of the Communist regime, and that such seizure was in violation of Rumanian law and thus constituted a "theft" deductible under section 165(c)(3) of the Internal Revenue

Code.[5] Petitioner further contends that from 1947 until 1959 she had a reasonable expectation of either recovering her property or receiving compensation therefor out of the proceeds of some $22 million of Rumanian assets held by the United States in 1947 and that her loss did not become certain until 1959, in which year petitioner was "awarded" by the Foreign Claims Settlement Commission the principal sum of $103,445 plus interest as compensation for the loss of this property, upon which she actually received a payment of only $33,-782.40. Of this, $10,395.95 was paid by petitioner for legal and other expenses related to the claim.[6]

The testimony of petitioner and her witnesses, who were former Rumanian nationals and who had suffered persecution by the Communist regime in that country, was highly charged with emotion. While we sympathize with the indignation which they so eloquently and, at times, vociferously expressed, their testimony has not been so clear that we can feel certain as to who did what, and when, to petitioner's property in Rumania after 1945. However, on the whole record, we have concluded that all of the property left in Rumania by petitioner was seized or confiscated by agents of the Communist-controlled Government of Rumania between 1947 and 1951, and that such seizures or confiscations were under color of decrees issued by that Government. Of one thing we are certain, and that is that petitioner has not proved the contrary.

Accordingly, our opinion in *William J. Powers*, 36 T.C. 1191, is controlling and on its authority we conclude that petitioner has failed to prove that respondent erred in his determination that petitioner was not entitled to the claimed deduction.

We point out that our decision in *William J. Powers, supra*, is in all ways consistent with the "Act of State" doctrine exemplified by *Underhill* v. *Hernandez*, 168 U.S. 250; *Oetjen* v. *Central Leather Co.*, 246

---

[5] All Code references are to the Internal Revenue Code of 1954, unless otherwise indicated.

SEC. 165(c). LIMITATION ON LOSSES OF INDIVIDUALS.—In the case of an individual, the deduction under subsection (a) shall be limited to—

\* \* \* \* \* \* \*

(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss to such individual arising from each casualty, or from each theft, exceeds $100. For purposes of the $100 limitation of the preceding sentence, a husband and wife making a joint return under section 6013 for the taxable year in which the loss is allowed as a deduction shall be treated as one individual. No loss described in this paragraph shall be allowed if, at the time of filing the return, such loss has been claimed for estate tax purposes in the estate tax return.

[6] Petitioner deducted in her return for 1959 as a loss the difference between the claim of $295,716.50 and the "award" of $103,445.00, or $192,271.50, and made the same claim in her petition. Petitioner on brief claims that the amount of the deduction should be the difference between $295,716.50 and the net amount received, $23,386.45, or $272,330.05, although she failed to amend her petition to reflect this increased claim.

U.S. 297; and *Banco Nacional de Cuba* v. *Sabbatino*, 376 U.S. 398, which would appear to preclude us from deciding that an act of a foreign government or of a revolutionary regime later recognized as a foreign government was a "theft" regardless of how despotic or arbitrary such an act might be.

The close relationship between these "Act of State" cases and the *Powers* case was recognized by petitioner's counsel in the first of many motions for continuance filed by him in which he stated as his ground for continuance that the case of *Banco Nacional de Cuba* v. *Sabbatino* then pending before the Supreme Court was "controlling on the issue of whether 'nationalization' is a 'theft' " for the purpose of a deduction for theft loss, and that the District Court decision therein, affirmed by the circuit court "supersedes the holding of such cases as [Powers]." The Supreme Court reversed. *Banco Nacional de Cuba* v. *Sabbatino*, *supra*, reversing 307 F. 2d 845.

If there could have been any doubt that Congress did not intend by section 165 (c) (3), *supra*, to allow a theft deduction to taxpayers on account of a loss of personal property confiscated under color of law by a foreign government "arbitrary and despotic as it may have been," we think that doubt was removed in 1964 when Congress found it necessary to enact special legislation adding section 165 (i) to the Internal Revenue Code in order that certain expropriation by the Cuban Government might be deemed casualties or thefts and thus deductible for tax purposes.[7]

In view of our conclusions expressed above, we need not discuss the alternative arguments of the respondent supporting his disallowance of the deduction claimed.

In addition to the disallowance of the deduction the respondent also determined that the net proceeds received by petitioner from the Foreign Claims Settlement Commission ($23,386.45) were taxable to petitioner as long-term capital gains because, he contends, her basis in the property lost was zero. Respondent's argument is to the effect that most or all of the property lost was originally owned by Franklin Gunther and passed to petititioner under his will, that no evidence was

---

[7] SEC. 165(i). CERTAIN PROPERTY CONFISCATED BY THE GOVERNMENT OF CUBA.—

(1) TREATMENT AS SUBSECTION (c)(3) LOSS.—For purposes of this chapter, in the case of an individual who was a citizen of the United States, or a resident alien, on December 31, 1958, any loss of property which—

(A) was sustained by reason of the expropriation, intervention, seizure, or similar taking of the property, before January 1, 1964, by the government of Cuba, any political subdivision thereof, or any agency or instrumentality of the foregoing, and

(B) was not a loss described in paragraph (1) or (2) of subsection (c),

shall be treated as a loss to which paragraph (3) of subsection (c) applies. * * *

adduced herein relative to the fair market value of his property at the time of his death, December 22, 1941, and that therefore the basis of the property in petitioner's hands must be zero. However, on the entire record, we have no difficulty in finding that petitioner's basis in the property lost was at least equal to the net amount of her recovery. Accordingly, we decide this issue for the petitioner.

*Decision will be entered under Rule 50.*