**James P. D'ANGELO, receiver for Papantla Royalties Corporation, a dissolved Delaware corporation, Plaintiff,**

**v.**

**PETROLEOS MEXICANOS, a decentralized Institution pertaining to the Republic of Mexico, Defendant.**

Court of Chancery of Delaware, New Castle.

Nov. 6, 1973.

Petroleos Mexicanos (Pemex) is a "decentralized Institution pertaining to the Republic of Mexico"; Pemex is neither a Delaware corporation nor is it licensed to do business in this State.

The Receiver alleges that Papantla is the legal owner of certain oil royalties and participation rights which were not officially expropriated when the Mexican government nationalized its oil industry in 1938. He says that Pemex was created for the purpose of managing that industry and has recognized Papantla as the owner of royalty and participation rights by making certain payments for them. The claim is for an accounting and payment of the moneys owed.

Plaintiff secured a sequestration order under 10 Del.C. § 366, directing seizure of defendant's property in Delaware consisting of "all contractual obligations, rights debts or credits, which are due or will become due" to Pemex from ten major oil companies. Responses to the order show that only Mobil Oil Corporation (Mobil), a New York corporation licensed to do business in Delaware, holds property for defendant; it owes Pemex about $500,000.

This is the decision on the motion of Pemex to vacate the sequestration and/or to dismiss the complaint for lack of jurisdiction.

William H. Bennethum, Wilmington, for plaintiff.

Arthur G. Connolly, Jr., and Stanley C. Macel, III, Connolly, Bove & Lodge, Wilmington, and Timothy P. Walsh, Hardin, Hess & Walsh, New York City, for defendant.

DUFFY, Justice:*

Plaintiff is the Receiver for Papantla Royalties Corporation (Papantla), a dissolved Delaware corporation; defendant,

A.

A mere recitation of these few facts suggests many serious legal problems beginning with the effort to sue an agency of a foreign sovereign and continuing through a wide-ranging attempt to sequester credits due or to become due on the books of ten international oil companies. Pemex has responded with a succession of legal arguments, many of which may have merit. But in the view I take of the case, application of the Act of State Doctrine is a primary issue and decision as to it determines subject matter jurisdiction.

* Sitting by assignment of the Chief Justice pursuant to the provisions of Art. 4, § 13 of the Constitution, Del.C.Ann.

Pemex argues that the Doctrine bars examination by this Court of the legality of the seizure (by appropriation or otherwise) in Mexico. The Receiver ·contends that the Doctrine is inapplicable for two principal reasons: (1) there was no formal expropriation of the property and no official act of state is involved; and, (2) Pemex's functions are proprietary (*jure gestionis*), as opposed to governmental (*jure imperii*). I conclude that these contentions are without merit.·

### B.

The "classic American statement" of the Act of State Doctrine is found in Underhill v. Hernandez, 168 U.S. 250, 18 S.Ct. 83, 42 L.Ed. 456 (1897) : [1]

"Every sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory. Redress of grievances by reasons of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves."

In *Underhill* plaintiff sought damages against the commander of revolutionary forces in Venezuela for alleged assaults and false imprisonment. The revolution eventually succeeded and its government was recognized by the United States. In applying the Act of State Doctrine, the Court noted that while revolutions and rebellions inconvenience other nations, the fact remains that the acts complained of were the acts of a military leader who represented an entity which was later acknowledged by the Executive Branch as the *de jure* government of Venezuela. The Court ruled that the legality of the

government and its acts could not be challenged in courts in the United States.

Although *Underhill* was decided in 1897 it has been followed on many occasions over the years by the Supreme Court: see, for example, Oetjen v. Central Leather Co., 246 U.S. 297, 38 S.Ct. 309, 62 L.Ed. 726 (1918); Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964); First National City Bank v. Banco Nacional de Cuba, 406 U.S. 759, 92 S.Ct. 1808, 32 L.Ed.2d 466 (1972); 12 A.L.R.Fed. 707. Indeed, in *Sabbatino* Justice Harlan stated that in subsequent cases the Court has not "manifest[ed] any retreat from Underhill". On the contrary, he wrote, *Oetjen* and Ricaud v. American Metal Co., 246 U.S. 304, 38 S.Ct. 312, 62 L.Ed. 733 (1918), reaffirm it in "unequivocal terms". And in the *First National City Bank* case, the Court stated that, although not inflexible, the "doctrine precludes any review whatever of the acts of the government of one sovereign State done within its own territory by the courts of another sovereign State". The scope of the doctrine is determined according to federal law, 12 A.L.R.Fed. 736, which Chief Judge Wright applied in this District in Interamerica Refining Corp. v. Texaco Maracaibo, Inc., 307 F.Supp. 1291 (D.Del. 1970).

Plaintiff contends that the Doctrine does not apply because there was no formal expropriation. His purpose is to distinguish between "expropriation" (presumably meaning a formal act of seizure or acceptance by the Mexican government) and "appropriation" (presumably meaning a use or taking in fact without formal act.[2] In the complaint plaintiff alleges that oil royalties to which it claims title were "seized and appropriated" by the "govern-

---

1. See 45 Am.Jur.2d, International Law § 83; 12 A.L.R.Fed. 707; II Moore, International Law Digest 30; and compare the cases in II Hackworth, Digest of International Law 16.

2. Black's Law Dictionary (4th ed.) 692 states that expropriation "primarily denotes a vol-

untary surrender of rights or claims; the act of divesting oneself of that which was previously claimed as one's own, or renouncing it. In this sense it is the opposite of 'appropriation'." Thus, it seems that "expropriation" and "appropriation" represent merely two sides of the same coin.

ment of Mexico"; and in an affidavit filed by plaintiff, Roscoe B. Gaither states:

"Papantla Royalties Corporation is merely trying to collect after an unlawful appropiation of rights to participation in oil. These rights have never been legally expropriated. The percentage of oil that pertains to Papantla Royalties Corporation has merely been unlawfully appropriated, used, sold or bartered by defendant without accounting and without payments to Plaintiff, without information, even as to how many wells have been drilled and how much oil has been produced and where. This information has been kept secret by defendant. If defendant has assets, in the jurisdiction of the courts in the United States it is our purpose to discover them and compel payments under uncancelled and existing royalties and participations contracts."

But the distinction which plaintiff argues is immaterial because the test is not whether the acts complained of were legal under Mexican law nor is the formality of taking significant. The test is simply this: were the acts done within the territorial limits of Mexico and were they done by Mexico in its governmental capacity? 12 A.L.R.Fed. 730.

As to the place of taking, there is little doubt that this was accomplished in Mexico where the oil properties are located. And even if it be assumed that the sequestered property (the debt due from Mobil) has a Delaware situs, this makes no difference. Plaintiff's claim is for an accounting arising out of conduct ("appropriation"), in Mexico. Sequestration is a process to compel appearance here; it is but a means to an end, not an independent basis for action in this jurisdiction. And on this aspect of the case *Oetjen* is direct authority for the proposition that the place of the government's act, not the presence of property within the jurisdiction of the reviewing court, is controlling.

In *Oetjen* animal hides were seized from a Mexican citizen by a general of revolutionary forces as a "contribution" and later were sold to a Texas corporation. The revolutionaries ultimately prevailed and their government was recognized by the United States. Claiming that the seizure was illegal and that he was the lawful owner, an assignee of the original owner attempted to replevy the hides in an American court. The Supreme Court applied the Act of State Doctrine and refused to examine plaintiff's claim to title, saying, "The remedy of the former owner, or of the purchaser from him, of the property in controversy, if either has any remedy, must be found in the courts of Mexico or through the diplomatic agencies of the political department of our government."

A companion case to *Oetjen*, Ricaud v. American Metal Co., supra, arose under similar circumstances. There, lead bullion was confiscated by the Mexican revolutionary forces. In a suit to determine title, the Court ruled that it would not review an act done by a general of a government later given diplomatic recognition when the act was committed within that country's geographical borders.

Thus it is clear beyond doubt that the acts on which plaintiff bases his claim took place in Mexico and there is no doubt either that Mexico holds the oil properties and the revenues derived from them in a governmental capacity. Indeed, Mr. Gaither states in his affidavit that:

"Defendant is not a corporation but a decentralized institution of the Mexican Government, recipient of the expropriated properties and answerable to the administration along the same lines as the Soviet Amtorg and other similar government agencies. It is perhaps the most important of the government owned enterprises."

In sum, the criteria for applying the Act of State Doctrine does not depend upon the legality of Mexico's conduct, nor upon whether the taking was accomplished by

expropriation or the appropriation which plaintiff argues. The acts were done in Mexico and are attributable to that sovereign state. The Doctrine, therefore, applies. Banco Nacional de Cuba v. Sabbatino, supra.[3]

### C.

■ Plaintiff points out, quite correctly, that the holding in *Sabbatino* was overruled by Congress with the passage of the Hickenlooper Amendment to the Foreign Assistance Act of 1964. 22 U.S.C. § 2370(e)(2);[4] 12 A.L.R. Fed. 727. However, by its terms that statute is limited to cases "based upon (or traced through) a confiscation or other taking after January 1, 1959." 22 U.S.C. § 2370(e)(2). Since the appropriation which is the foundation for the claim asserted here occurred in 1938, the Amendment has no application

(assuming *arguendo* that it would otherwise apply).

### D.

Finally, plaintiff argues that Pemex is primarily a proprietary enterprise and not a governmental activity, but that makes no difference in this case. The seizure here was not by Pemex, but the Mexican government. The fact that the appropriated rights were subsequently administered by Pemex ("a decentralized institution of the Mexican Government") does not change the nature of the taking. Harris and Company Advertising Inc. v. Republic of Cuba, 127 So.2d 687 (Fla.Dist.Ct.App.1961), upon which plaintiff relies, is inapposite; it involved sovereign immunity, not the Act of State Doctrine.[5]

\* \* \* \* \* \*

The law is clear that any redress for the taking involved in this case must be sought

---

3. The Doctrine is, in some ways, a manifestation of judicial restraint. And that restraint, which precludes examination of the conduct of one government in the courts of another, rests upon the highest considerations of international comity and expediency. Oetjen v. Central Leather Co., supra. In that case the Court said: "To permit the validity of the acts of one sovereign state to be re-examined and perhaps condemned by the courts of another would very certainly 'imperil the amicable relations between governments and vex the peace of nations'." See 12 A.L.R. Fed. 730.

4. The statute provides in part:
"§ 2370. *Prohibitions against furnishing assistance.*

. . . . .

(e) Nationalization, expropriation or seizure of property of United States citizens, or taxation or other exaction having same effect; failure to compensate or to provide relief from taxes, exactions, or conditions; report on full value of property by Foreign Claims Settlement Commission; act of state doctrine
(2) Notwithstanding any other provision of law, no court in the United States shall decline on the ground of the federal act of state doctrine to make a determination on the merits giving effect to the principles of international law in a case in which a claim of title or other right to property is asserted by any party including a foreign state (or a party claiming through

such state) based upon (or traced through) a confiscation or other taking after January 1, 1959, by an act of that state in violation of the principles of international law, including the principles of compensation and the other standards set out in this subsection: *Provided,* That this subparagraph shall not be applicable (1) in any case in which an act of a foreign state is not contrary to international law or with respect to a claim of title or other right to property acquired pursuant to an irrevocable letter of credit of not more than 180 days duration issued in good faith prior to the time of the confiscation or other taking, or (2) in any case with respect to which the President determines that application of the act of state doctrine is required in that particular case by the foreign policy interests of the United States and a suggestion to this effect is filed on his behalf in that case with the court.
. . ."
The Amendment does not violate the Constitution. Banco Nacional de Cuba v. Farr, 2 Cir., 283 F.2d 166 (1967).

5. It is interesting to note that the same court which decided *Harris* distinguished it later in applying the Act of State Doctrine. See National Institute of Agrarian Reform v. Kane, 153 So.2d 40 (Fla.Dist.Ct.App.1963). The Court applied the Doctrine and held that it therefore lacked subject matter jurisdiction to adjudicate the claim.

in available forums in Mexico or through diplomatic channels. This Court will not review the validity of an act of appropriation by Mexico within its boundaries. It follows that defendant's motion to dismiss the complaint must be granted.