**Farag M. Mohammed SALTANY, et al., Plaintiffs,**

**v.**

**Ronald M. REAGAN, et al., Defendants.**

**Civ. A. No. 88–0981.**

United States District Court, District of Columbia.

Dec. 23, 1988.

Ramsey Clark, Washington, D.C., for plaintiffs.

Larry L. Gregg, Dept. of Justice, Washington, D.C., for U.S. defendants.

Mark R. Joelson, Washington, D.C., for United Kingdom defendants.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

This is an action to recover damages for death, personal injury, and the destruction of property occurring in the course of air strikes by U.S. military forces on targets in the nation of Libya in April, 1986.[1]

Plaintiffs allege themselves to be 55 civilians, all residents of Libya, whose decedents were killed, who suffered personal injuries, or whose property was damaged or destroyed in the attacks. Defendants are the President of the United States, various civilian and military officials of the U.S. government, Prime Minister Margaret Thatcher of the United Kingdom, and the United States and the United Kingdom themselves. In substance, the complaint alleges that all defendants conspired, acted in concert with, and aided and abetted one another in causing or permitting the attacks to be made, with a purpose to assassinate the Libyan head of state, and/or to "terrorize" the civilian population of Libya to the point of revolt against his government. The defendants are, thus, alleged to have violated the criminal and civil laws of several U.S. states, of the United States, certain treaties, and rules of international law.

Jurisdiction is said to be predicated upon various provisions of Title 28 of the U.S. Code, specifically, sections 1331 (federal question); 1346(b) (the Federal Tort Claims Act); 1350 (the Alien Tort Claims Act); and 1361 (mandamus). Title 18, section 1964 (the Racketeer Influenced and Corrupt Organization Act ("RICO")) is also said to confer jurisdiction.

All defendants have moved to dismiss the complaint, and for an award of sanctions.[2]

### I.

The British defendants, the United Kingdom and Prime Minister Thatcher, are sought to be held liable because the British government gave permission for U.S. Air Force planes based in Great Britain to depart from and return to their air bases to participate in the mission.

Pursuant to 28 U.S.C. § 517 the United States has suggested to the Court the immunity from its jurisdiction of Prime Minister Thatcher as the sitting head of government of a friendly foreign state. The Department of State has made the requisite certification and determination to allow the immunity. The Court must accept them as conclusive. *Ex Parte Republic of Peru,* 318 U.S. 578, 589, 63 S.Ct. 793, 800, 87 L.Ed. 1014 (1943); *see Republic of Mexico v. Hoffman,* 324 U.S. 30, 35, 65 S.Ct. 530, 532–33, 89 L.Ed. 729 (1945). The complaint will be dismissed as to the defendant Thatcher.

With respect to the claims made against the United Kingdom itself, the act of state doctrine compels a dismissal of the complaint. *Underhill v. Hernandez,* 168 U.S. 250, 252, 18 S.Ct. 83, 84, 42 L.Ed. 456 (1897); *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964). What is charged is, quite sim-

---

**1.** On the evening of April 14, 1986, on the order of the President of the United States, U.S. Air Force and U.S. Navy aircraft from bases in the United Kingdom and carriers of the U.S. Sixth Fleet in the Mediterranean Sea, respectively, executed bombing raids in the vicinity of Tripoli and Benghazi, Libya. The President acted, pursuant to Article 51 of the United Nations Charter, to protect U.S. lives and property against acts of terrorism determined by the U.S. government to have been instigated by the Libyan government.

**2.** The Court will assume, for purposes of the motions, that it is bound by the rule that all of the well-pleaded factual allegations of the complaint must be taken as true, *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977); that plaintiffs are entitled to all favorable inferences which may be drawn therefrom, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); and that the complaint may not be dismissed unless it appears beyond doubt that plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

ply, Britain's complicity in an illicit act of war committed by the United States. By any definition that description of the United Kingdom's allegedly wrongful conduct constitutes an archetypal act of state. Permission given by the head of government of one sovereign nation, speaking from its seat of government, to allow its territory to be utilized by an ally, at the ally's express request, to mount a military operation against a third power could not possibly be otherwise characterized. The Court concludes that the doctrine stands as an absolute bar to action against the United Kingdom, and it therefore becomes unnecessary to consider the several other jurisdictional objections it has advanced in support of its motion to dismiss.[3]

## II.

■ The United States defendants also contend that this Court is without jurisdiction to entertain the claims against them, the issues presented being both non-justiciable "political questions" entrusted by the Constitution to the other branches of government, and the several defendants entitled to immunities which render them unamenable to such a civil suit for damages. The Court agrees that all U.S. defendants are immune from this suit and does not, therefore, reach the "political questions" issue.

The United States itself, as a sovereign, is immune from suit except to the extent it has waived its immunity, and a waiver of its sovereign immunity must be unequivocally expressed and never implied. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351–52, 63 L.Ed.2d 607 (1980). None of the statutory provisions relied upon by plaintiffs to maintain this action against the United States—the Federal Tort Claims Act (28 U.S.C. § 2671 *et seq.*), the Alien Tort Claims Act (28 U.S.C. § 1350), the Foreign Claims Act (10 U.S.C. § 2734), and RICO (18 U.S.C. § 1964)—purport to waive the sovereign immunity of the United States with respect to claims such as those made here.[4] The complaint will be dismissed as to the defendant United States.

The military units were ordered into action by President Reagan in his capacity as commander-in-chief of the armed forces of the United States under Article II, section 2, of the Constitution. In so doing he acted with absolute immunity from liability in private civil suits for damages. *Nixon v. Fitzgerald*, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982). The complaint must be dismissed as to the defendant Reagan.

All other named defendants are civilian or military officials of the United States government who are alleged to have planned and/or executed the air strikes ordered by the President. That they did so in their official capacities, and none other, is manifest, and plaintiffs do not allege

---

**3.** The Court notes, however, that the United Kingdom has also asserted its sovereign immunity as a bar to the action. A foreign sovereign's immunity as a defense to suit in courts of the United States is now governed by the Foreign Sovereign Immunities Act, 28 U.S.C. § 1330, 1602–1611, *see Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983), and appears to be a viable defense for the United Kingdom to claims such as are asserted here. *See* 28 U.S.C. § 1604, 1605.

**4.** The Federal Tort Claims Act expressly preserves the sovereign immunity of the United States for acts of its officials that involve the exercise of discretion, arise from combatant activities in time of war, or arise in a foreign country. 28 U.S.C. § 2680(a), (j), and (k).

The Alien Tort Claims Act, which confers jurisdiction upon U.S. district courts to hear tort claims by aliens for alleged violations of U.S.

treaties and the law of nations, is not itself a waiver of sovereign immunity, at least not that of the United States. *Sanchez–Espinoza v. Reagan*, 770 F.2d 202, 207 (D.C.Cir.1985). (*But cf. Amerada Hess Shipping Corp. v. Argentine Republic*, 830 F.2d 421 (2nd Cir.1987), *cert. granted*, —— U.S. ——, 108 S.Ct. 1466, 99 L.Ed.2d 697 (1988).)

The Foreign Claims Act, allowing administrative claims to be made to the U.S. government for injury to persons or property abroad caused by its armed forces *other than in combat*, not only fails to contain an express waiver of sovereign immunity, but also contemplates no judicial review of the denial of a claim. *See Broadnax v. United States Army*, 710 F.2d 865 (D.C. Cir.1983); 10 U.S.C. § 2735.

RICO merely empowers U.S. district courts to award civil remedies to persons injured by a "pattern of racketeering activity."

otherwise. The avowed objective of the operation, irrespective of motive, was to inflict injury upon the Libyan targets which would be "tortious" were it to be judged by any civil law standards. The mission also called upon each participant of every rank to exercise discretion in a myriad of contexts of utmost complexity and gravity, not to mention danger. And each acted, as duty required, in accordance with the orders of the commander-in-chief or a superior officer. In the circumstances presented by this case, the Court concludes that each of the other named U.S. defendants is similarly entitled to immunity from this suit, whether the immunity is classified as absolute or qualified, and whatever the origins of the rights plaintiffs claim may have been violated. *See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The complaint will be dismissed as to each of them.

### III.

The plaintiffs, purportedly citizens or residents of Libya, cannot be presumed to be familiar with the rules of law of the United States. It is otherwise, however, with their counsel. The case offered no hope whatsoever of success, and plaintiffs' attorneys surely knew it.

The injuries for which suit is brought are not insubstantial. It cannot, therefore, be said that the case is frivolous so much as it is audacious. The Court surmises it was brought as a public statement of protest of Presidential action with which counsel (and, to be sure, their clients) were in profound disagreement. The courts of the United States, however, serve in some respects as a forum for making such statements, and should continue to do so. As Justice Stevens said, as the Supreme Court dismissed, but declined to impose sanctions for, a meritless appeal:

> Freedom of access to the courts is a cherished value in our democratic society. Incremental changes in settled rules of law often result from litigation. The courts provide the mechanism for the peaceful resolution of disputes that might otherwise give rise to attempts at

self-help. There is, and should be, the strongest presumption of open access to all levels of the judicial system. Creating a risk that the invocation of the judicial process may give rise to punitive sanctions simply because the litigant's claim is unmeritorious could only deter the legitimate exercise of the right to seek a peaceful redress of grievances through judicial means.

*Talamini v. Allstate Insurance Co.,* 470 U.S. 1067, 1070–71, 105 S.Ct. 1824, 1826, 85 L.Ed.2d 125 (1985). For essentially those reasons, therefore, the Court will deny defendants' applications for an award of sanctions.

It is, this 23rd day of December, 1988,

ORDERED, that the complaint is dismissed with prejudice as to all defendants; and it is

FURTHER ORDERED, that defendants' applications for an award of sanctions is denied.