UNITED STATES of America, Plaintiff,

v.

Ronald J. HENDRON, Jehmin Lah, Stan Kinman, Zbigniew Grabowski, a/k/a Mr. Bischek, Heiko Luikenga, Rajmund Szwonder, Jan Gorecki, Wojciech Baranski, Jerzy Brzostek, and Jerzy Napiorkowski, Defendants.

No. 92 CR 424.

United States District Court,
E.D. New York.

March 1, 1993.

Mary Jo White, U.S. Atty. (Tanya Y. Hill, Peter A. Norling, of counsel), Brooklyn, NY, for plaintiff.

Thomas J. Cahill, New York City, for defendant Szwonder.

## OPINION

NICKERSON, District Judge:

By order dated December 16, 1992, this court denied without opinion defendant Rajmund Szwonder's motion to dismiss the indictment. He claimed he was immune from this court's jurisdiction under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602–11. This opinion sets forth the reasons for that order.

### I.

The facts so far as relevant to the motion are as follows.

During the period covered by the indictment, Szwonder, a Polish citizen, was a director in charge of production at Lucznik, a corporation wholly owned by the state of Poland. He claims that his actions were performed solely in his capacity as an employee of that government-owned corporation.

According to the government, Szwonder's role in the conspiracy was as follows. In July 1991, he arranged with a British businessman to send three AK–47 assault rifles (AK–47s) produced by Lucznik to the United States, reporting to the Polish government that they were to be exported to Sri Lanka.

In February 1992, Szwonder contracted with Ronald Hendron, an American arms trader, for Lucznik to sell 40,000 AK–47s to Hendron's company for shipment to the Philippines. In March 1992, Szwonder met with Hendron and United States undercover agents in Germany, who informed Szwonder that the AK–47s were actually destined for Iraq, in violation of United Nations sanctions. The agents also informed Szwonder that Iraq would pay for the arms out of the proceeds from prior arms deals or Iraqi assets hidden before the Gulf War in 1991.

The agents later arrested Szwonder and Hendron in Germany. Szwonder was charged with violations of German law and held pending extradition to the United States.

In April 1992 a Grand Jury in the Eastern District of New York indicted Szwonder for conspiracy, importation into the United States of assault weapons, importing arms without a license, and the transaction of business involving proceeds of unlawful activity all in violation of the laws of the United States.

### II.

Defendant says that the Foreign Sovereign Immunities Act (the Act), 28 U.S.C. §§ 1602–11, bars his prosecution because the Act makes him immune from the jurisdiction of United States courts. The government says the Act applies only to civil cases.

Section 1604, the heart of the Act, reads,

Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.

A "foreign state" is defined in § 1603 to include an "agency or instrumentality of a foreign state" involving any "entity" which is "a separate legal person, corporate or otherwise."

Presumably the Act covers an individual sued in an official capacity. *See, Chuidian v. Philippine National Bank,* 912 F.2d 1095, 1101–03 (9th Cir.1990), and cases cited. But the court need not decide this issue because, despite the broad language of § 1604, this court holds that the Act applies only to civil proceedings.

Section 1602, entitled Findings and Declaration of Purpose, states that judicial resolution of foreign states' claims to immunity would protect the rights of "foreign states and litigants." The term "litigant" ordinarily refers to a party in a civil suit and not to the state or federal government as prosecutor of criminal charges.

That section also notes that immunity does not extend to a state's "commercial activity" and that therefore "commercial property may be levied upon for the satisfaction of judgments...." This is appropriate language to refer to a judgment in a civil case, as opposed to a judgment in a criminal case imposing a "sentence" or "fine."

Section 1605(a)(1)–(6) sets forth six exceptions to the immunity granted in § 1604. None reveals an intent to accord immunity to a criminal defendant and most show that immunity is contemplated only in a civil case.

The second exception to immunity is where "the action is based upon a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(2). This wording hardly suggests criminal prosecution. The third and fourth apply to cases where "rights in property ... are in issue." 28 U.S.C.

§ 1605(a)(3)–(4). Criminal cases rarely if ever resolve competing property rights.

The fifth and sixth exceptions in § 1605(a) clearly refer to civil suits in that they relate to "money damages" sought and arbitration agreements. 28 U.S.C. § 1605(a)(5)–(6).

Section 1605(b) provides that a foreign state is not immune where the case is brought to enforce a maritime lien, provided the requisite notice is given. Similar provisions appear in § 1605(d), where the action is to foreclose a ship mortgage.

Section 1606, entitled "Extent of liability," refers to "punitive damages" and "actual and compensatory damages," terms of civil liability.

Section 1607, entitled "Counterclaims," precludes a foreign state which has brought an action from asserting immunity with respect to counterclaims. There is no such thing as a counterclaim in a criminal case.

Section 1608, entitled "Service; time to answer; default" sets forth timetables and procedures applicable only to civil suits.

Section 1609 declares foreign states immune from "attachment and execution of property," except as provided in §§ 1610–11. Only the Federal Rules of Civil Procedure and not the Federal Rules of Criminal Procedure provide for "attachment" of property. Fed.R.Civ.P. 4(e), 64.

Finally §§ 1610 and 1611 qualify the immunity from attachment and execution.

In summary, the Act contains a panoply of provisions that are consistent only with an application to civil cases and not to criminal proceedings. Other than the broad text of § 1604's declaration of immunity, nothing in the text of the Act suggests that it applies to criminal procedures.

The legislative history confirms this court's conclusion.

The House version of the bill passed. The House Report states that the Act's purpose is to "provide when and how parties can maintain a lawsuit against a foreign state or its entities in the courts of the United States and to provide when a for-

eign state is entitled to sovereign immunity." H.R.Rep. No. 1487, 94th Cong., 2d Sess. 6 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604.

That the "lawsuits" referred to are civil is confirmed by the examples given: a price dispute between an American business person and foreign state trading company, and a real estate contract dispute between an American citizen and a foreign government.

The Report shows that the purpose of the bill was to make the judiciary, rather than the executive, the branch to determine claims of immunity. The Report says that to insulate these immunity decisions from political and diplomatic pressures, which "call into question whether our citizens will have access to the courts," the bill would eliminate immunity where the foreign state was acting in the commercial sphere. It would thus provide greater predictability in suits brought by American citizens against foreign governments. H.R.Rep. 1487, pp. 6–8, 13, 1976 U.S.C.C.A.N. 6605–06, 6611. The Act thus provides the means to institute such suits and to enforce any judgment obtained.

The legislative history gives no hint that Congress was concerned that a foreign defendant in a criminal proceeding would invoke the Act to avoid a federal court's jurisdiction.

It is true that the Act in its preamble invokes Congress's authority under Article I, § 8(10) of the Constitution, "to define and punish piracies and felonies committed on the high seas, and offenses against the Law of Nations." But the Report refers only to Congress's authority to "define ... offenses against the Law of Nations." Civil actions can and do arise from violations of "the law of nations." *See* 28 U.S.C. § 1350 (granting district courts jurisdiction over "any civil action ... for a tort only, committed in violation of *the law of nations*") (emphasis added).

In its "Section-by-Section Analysis" of the bill, the Report discusses in some detail § 1605, headed "General exceptions to the jurisdictional immunity of a foreign state." Subsection 1605(a)(2) mentions three situa-

tions in which the foreign state is denied immunity, namely, (1) where the "commercial activity [is] carried on in the United States by the foreign state" (defined in § 1603(e) to include activity "having substantial contact with the United States"), (2) where an "act performed in the United States [is] in connection with a commercial activity of the foreign state elsewhere," and (3) where an "act outside the territory of the United States [is] in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."

The Report then recites: "Neither the term 'direct effect' nor the concept of 'substantial contacts' embodied in section 1603(e) is intended to alter the application of the Sherman Antitrust Act, 15 U.S.C. §§ 1, *et seq.*, to any defendant. Thus, the bill does not affect the holdings in such cases as *United States v. Pacific & Arctic Ry. & Nav. Co.*, 228 U.S. 87, 33 S.Ct. 443, 57 L.Ed. 742 (1913)."

That criminal case, so far as pertinent, held that the United States could prosecute a conspiracy between American and Canadian Companies running a railroad through the United States and Canada in restraint of trade and in violation of the Sherman Antitrust law, which has criminal as well as civil application. The court said that the activity was "within the jurisdiction of the laws of the United States, criminal and civil."

Defendant implies that the citation of the case shows that Congress intended to apply the Act to criminal prosecutions. But the holding simply recognizes what the Act confirms, namely, that activity having a direct effect inside the United States "is within the jurisdiction of the laws of the United States." *Id.*, 228 U.S. at 106, 33 S.Ct. at 448. There is no basis to infer from the Report's citation that the Committee was suggesting the Act would grant immunity from criminal prosecution.

In only one case cited in support of the motion did a defendant raise immunity under the Act as a defense to a criminal prosecution. *United States v. Crawford Enters., Inc.,* 643 F.Supp. 370 (S.D.Tex.

1986). There the defendant faced sanctions for civil and criminal contempt. But the court found the defendant had waived any immunity, and did not address the applicability of the Act.

Commendably the government has referred the court to one case granting immunity under the Act in a criminal case to a foreign company as an agent of the French government. *Gould, Inc. v. Mitsui Mining & Smelting Co.*, 750 F.Supp. 838, 843–44 (N.D.Ohio 1990). With respect, this court declines to follow that decision.

### III.

 Defendant refers to the Act of State doctrine but does not discuss it. It embodies the principle that "the courts of one country will not sit in judgment on the acts of the government of another done within its own territory." *Underhill v. Hernandez*, 168 U.S. 250, 252, 18 S.Ct. 83, 84, 42 L.Ed. 456 (1897). The doctrine is not one of immunity and presents no jurisdictional question. It "addresses the Court's permissible scope of inquiry into certain governmental acts." *United States v. Noriega*, 746 F.Supp. 1506, 1521 (S.D.Fla. 1990). For the doctrine to apply, the defendant must show that he performed public acts on behalf of the state. *Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 694, 96 S.Ct. 1854, 1861, 48 L.Ed.2d 301 (1976). Whether Szwonder acted on behalf of the government of Poland is an issue of fact yet to be resolved.

The Act of State doctrine is not a basis for dismissing the indictment.

### IV.

For the foregoing reasons, defendant's motion to dismiss the indictment was denied.