LIBYAN AMERICAN OIL COMPANY, Plaintiff,

v.

SOCIALIST PEOPLE'S LIBYAN ARAB JAMAHIRYA, formerly Libyan Arab Republic, Defendant.

Misc. No. 79–57.

United States District Court, District of Columbia.

Jan. 18, 1980.

---

Gerald Goldman, Washington, D. C., for plaintiff.

Preston Brown, Washington, D. C., for defendant.

## MEMORANDUM

JOHN LEWIS SMITH, Jr., District Judge.

The Libyan American Oil Company (LIAMCO) brings this action to confirm and enforce an arbitration award rendered on April 12, 1977, in Geneva, Switzerland, against the Socialist People's Libyan Arab Jamahirya (Libya). The arbitral award was rendered pursuant to a clause contained in certain petroleum concessions entered into by LIAMCO and Libya in 1955. In 1973 and 1974 Libya nationalized both LIAMCO's rights under the concessions and certain of its oil drilling equipment. Following unsuccessful negotiations regarding compensation, LIAMCO rejected the terms of the nationalization and initiated proceedings under the arbitration clause. Libya, maintaining that the nationalization superseded the concessions altogether, refused to participate in the Geneva proceedings. The matter is now before the Court upon LIAMCO's petition for confirmation of the award and Libya's opposition, styled a motion to dismiss. LIAMCO invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1330(a) and (b) (actions against foreign states), arguing that Libya is not immune under the Foreign Sovereign Immunities Act of 1976 (FSIA) (codified at 28 U.S.C. §§ 1330, 1332(a)(2)–(4), 1391(f), 1441(d), and 1602–1611). LIAMCO further contends

that the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (Convention) (codified at 9 U.S.C. §§ 201–208) requires the confirmation of the award. Service has been complied with in accord with the terms of 28 U.S.C. § 1608. Respondent Libya does not challenge the validity of the underlying award. Instead it mounts a two pronged defense arguing first that this Court is without jurisdiction, and second, that even should the Court find jurisdiction, it should refrain from enforcing the award under the Convention because of the act of state doctrine.

*The jurisdictional question*

Libya is a foreign state, 28 U.S.C. § 1603(a), and therefore entitled to immunity from the jurisdiction of the United States courts according to the FSIA, 28 U.S.C. § 1604, unless some exception set forth in sections 1605–1607 of the same title applies. If an exception to immunity can be demonstrated, then this Court has jurisdiction pursuant to section 1330, provided all the requirements of subsections (a) and (b) are met.

■ The legislative history clarifies that before United States courts may exercise jurisdiction over a foreign sovereign, the FSIA requires a showing not only of particular reasons for denying sovereign immunity (§ 1330(a)), but also of the traditional requirements for in personam jurisdiction, including the requirements of due process (§ 1330(b)).

(b) *Personal Jurisdiction.*—Section 1330(b) provides in effect, a Federal long-arm statute over foreign states . . . . The requirements of minimum jurisdictional contacts and adequate notice are embodied in the provision. Cf. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). For personal jurisdiction to exist under section 1330(b), the claim must first of all be one over which the district courts have original jurisdiction under section 1330(a), meaning a claim for which the foreign state is not entitled to immunity. Significantly, each of the immunity provisions in the bill, sections 1605–1607, requires some connection between the lawsuit and the United States, or an express or implied waiver by the foreign state of its immunity from jurisdiction. These immunity provisions, therefore, prescribe the necessary contacts which must exist before our courts can exercise personal jurisdiction. Besides incorporating these jurisdictional contacts by reference, section 1330(b) also satisfies the due process requirement of adequate notice by prescribing that proper service be made under section 1608 of the bill. Thus, sections 1330(b), 1608 and 1605–1607 are all carefully interconnected. H.R.Rep. No. 1487, 94th Cong., 2d Sess. 13, *reprinted in* [1976] U.S.Code Cong. & Admin.News, p. 6604, at p. 6612.

Subsection (b) states that "[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title." 28 U.S.C. § 1330(b). Petitioner avers that § 1608 notice has been given and respondent does not contest this point. It remains to determine whether one of the exceptions to immunity under subsection (a) applies.

■ As noted in the legislative history quoted above, original jurisdiction under subsection (a) may be established either by "some *connection* between the lawsuit and the United States, or an express or implied *waiver* by the foreign state." (emphasis added). Section 1605(a)(1) provides that a foreign state is not immune if it has "waived its immunity either explicitly or by implication." 28 U.S.C. § 1605(a)(1). Petitioner LIAMCO maintains that Libya implicitly waived its sovereign immunity by expressly agreeing to the arbitration and choice of law clauses negotiated in 1966 and 1967, more than ten years after the concessions were originally entered into. LIAMCO supports its interpretation of the effect of those clauses by reference to another passage in the legislative history of the FSIA.

With respect to implicit waivers, the courts have found such waivers in cases

where a foreign state has agreed to arbitration in another country or where the foreign state has agreed that the law of a particular country should govern a contract. H.R.Rep. No. 94–1487, 94th Cong., 2d Sess. 18, *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 6604, 6617.

A recent case in this Court also supports this view. In *Ipitrade Int'l, S.A., v. Federal Republic of Nigeria,* 465 F.Supp. 824 (D.D. C.1978), an action for enforcement of an arbitral award based on breach of contract, the Court held that the foreign sovereign's "agreement to adjudicate all disputes arising under the contract in accordance with Swiss law and by arbitration under International Chamber of Commerce rules constitute[d] a waiver of sovereign immunity under the Act." 465 F.Supp. at 826. As in the present case, the award was granted in a foreign jurisdiction but sought to be enforced here. In the case at bar, the arbitration clause agreed to by Liamco and Libya was a special amendment to the original concession. The 1955 agreement had provided that any eventual arbitration should take place in Libya's capitol, Tripoli. The clause that LIAMCO proposed in 1966, however, provided that arbitration should take place either where the parties agreed, or where the arbitrators might agree. Libya agreed to this provision. Although the United States was not named, consent to have a dispute arbitrated where the arbitrators might determine was certainly consent to have it arbitrated in the United States.

Libya thus waived its defense of sovereign immunity for the purposes of § 1330(a) and because there is no suggestion that the requirements of notice under § 1330(b) have not been met, this Court has jurisdiction to recognize and enforce the award. The question of whether to exercise that jurisdiction remains.

*The act of state doctrine*

The Convention under which LIAMCO would have this Court confirm the arbitral award plainly favors enforcement of foreign awards in this forum.

The court *shall* confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention. 9 U.S.C. § 207. (emphasis added) Of the seven exceptions listed in Article V of the Convention, one is determinative of the issue before the Court. Subsection 2(a) of Article V provides that recognition and enforcement of an award may be refused if the competent authority in the country where enforcement is sought determines that "[t]he subject matter of the difference is not capable of settlement by arbitration under the law of that country." 9 U.S.C. § 201.

The "subject matter of the difference" in this case is Libya's nationalization of LIAMCO's assets and the rate at which LIAMCO should be compensated for the assets taken under that nationalization. Should that rate be determined according to the terms of the original concessions (by arbitration), or should it rather be determined according to the provision of the nationalization laws themselves (by Libyan committee)?

▮ Had that question been brought before this Court initially, the Court could not have ordered the parties to submit to arbitration because in so doing it would have been compelled to rule on the validity of the Libyan nationalization law. That law by its terms abrogated the concessions entirely and vested exclusive determination of any compensation in a special committee provided for in the same law. The practice that counsels this judicial abstention from passing on the effectiveness of the acts of foreign sovereigns is termed the act of state doctrine. It finds its classic American expression in the Supreme Court case of *Underhill v. Hernandez,* 168 U.S. 250, 18 S.Ct. 83, 42 L.Ed. 456 (1897).

Every sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory. 168 U.S. at 252, 18 S.Ct. at 84.

The doctrine does not deny courts jurisdiction once it has been acquired.

It requires only that when it is made to appear that the foreign government has

acted in a given way on the subject-matter of the litigation, the details of such action or the merit of the result cannot be questioned, but must be accepted by our courts as a rule for their decision. *Ricaud v. American Metal Co.*, 246 U.S. 304, 309, 38 S.Ct. 312, 314, 62 L.Ed. 733 (1917). Since the ruling in *Underhill*, courts have consistently found a foreign state's act of nationalization to be the classic example of an act of state. "Expropriations of the property of an alien within the boundaries of the sovereign state are traditionally considered to be public acts of the sovereign removed from judicial scrutiny by application of the act of state rubric." *Hunt v. Mobil Oil Corp.*, 550 F.2d 68, 73 (2d Cir. 1977), *cert. denied*, 434 U.S. 984, 98 S.Ct. 608, 57 L.Ed.2d 477. Furthermore, other nationalization decrees by the state of Libya identical to the decrees affecting LIAMCO have been considered as sovereign acts for the purposes of the act of state doctrine. As the Court noted in *Hunt*,

> We conclude that the political act complained of here was clearly within the act of state doctrine and that since the disputed pleadings inevitably call for a judgment on the sovereign acts of Libya the claim is non-justiciable. 550 F.2d at 73.

Petitioner argues that even if the act of state doctrine should be applied in this case, the exception embodied in the Hickenlooper Amendment to the Foreign Assistance Act of 1964 would still require this Court to decide this case. The amendment provides that unless the President, for foreign policy reasons, suggests otherwise, courts must not decline on the ground of the act of state doctrine to decide the merits of a

> claim of title or other right to property . . . based upon (or traced though) a confiscation or other taking after January 1, 1959, by an act of that state in violation of the principles of international law. 22 U.S.C. § 2370(e)(2).

The President has made no suggestion in this matter, but petitioner has failed to show that the amendment's requirements have been met.

The contract rights that lie at the heart of petitioner's claim do not constitute property for purposes of the amendment, *Menendez v. Saks & Co.*, 485 F.2d 1355, 1372 (2d Cir. 1973), *rev'd on other grounds, sub nom. Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976), nor have courts found that the repudiation of contractual obligations amounts to a "confiscation or other taking," as those terms are employed in the statute. *Occidental of Umm al Qay., Inc. v. Cities Service Oil Co.*, 396 F.Supp. 461, 472 (D.C.La.1975). Finally, petitioner has failed to show that the taking was in violation of international law. The nationalization provisions of Libyan law established means for LIAMCO to recover its investment. Because LIAMCO may not have been satisfied with the rate at which Libya was prepared to recompense the company does not render the original nationalization in violation of international law.

For the reasons set forth above, the Court declines to recognize or enforce the arbitral award. An order consistent with this memorandum follows.