In the Matter of the Arbitration between MARITIME INTERNATIONAL NOMINEES ESTABLISHMENT, Petitioner,

v.

The REPUBLIC OF GUINEA, Respondent.

Civ. A. No. 78–388.

United States District Court, District of Columbia.

Jan. 12, 1981.

James W. Schroeder, Washington, D. C., for petitioner.

Stephen N. Shulman, Joseph A. Artabane, Mary M. Kearney, Linda E. Carlisle, Washington, D. C., for respondent.

MEMORANDUM

GESELL, District Judge.

Petitioner in this case is seeking an order confirming an arbitration award in excess of $25,000,000 made following this Court's Order of June 15, 1978, directing the parties to arbitrate. The Republic of Guinea, after ignoring the earlier proceedings and failing to participate in the arbitration, now comes

forward at the eleventh hour contending that this Court is without jurisdiction. Although numerous issues have been advanced by the parties, it now is agreed that the central issue is whether the Foreign Sovereign Immunities Act ("FSIA") of 1976 (principally codified at 28 U.S.C. §§ 1330, 1602–1611 (1976)) granted this Court jurisdiction to order Guinea to arbitrate. The Court finds that it had jurisdiction under the FSIA and an Order now confirming the award accompanies this Memorandum.

A brief description of the history of this litigation will help clarify the legal issues involved. In 1971, petitioner, a Liechtenstein corporation, and the Republic of Guinea signed an agreement forming a company known as Societe d'Economie Mixte de Transports Maritimes (SOTRAMAR) to engage in the shipment of bauxite mined in Guinea. SOTRAMAR was formed as a mixed-economy company under the laws of Guinea,[1] and, according to the contract, "shall have a civil personality and financial autonomy." Disputes under the contract forming SOTRAMAR were to have been resolved by binding arbitration conducted by three arbitrators selected by the President of the International Centre for Settlement of Investment Disputes ("ICSID"), a group affiliated with the World Bank.

A dispute ultimately arose between petitioner and the Republic of Guinea, and petitioner attempted to get approval from Guinea for the matter to be heard in arbitration as contemplated by the contract. Guinea refused to give its consent, and petitioner came before this Court in 1978 seeking an order to compel arbitration pursuant to the United States Arbitration Act, 9 U.S.C. § 1 et seq. (1976).[2] Despite more than adequate notice, Guinea never appeared in the proceedings before this Court. A hearing was held and an arbitration was ordered before the American Arbitration Association.

Over a two-year period, extensive arbitration proceedings were held. Guinea repeatedly was made aware of what was occurring and periodically was offered an opportunity to appear and respond. Guinea never answered in any fashion. In June, 1980, the arbitration was concluded and an award was made in favor of petitioner. The petitioner then filed a motion with this Court to confirm the award and enter judgment. Shortly before a hearing on the motion was scheduled in this Court, Guinea obtained counsel and that counsel sought a delay in order to respond. A short delay was granted, and it was then that Guinea first advanced its argument that this Court was without jurisdiction.[3]

Jurisdiction under the FSIA has been discussed by several other courts faced with situations somewhat similar to the one now posed. See, e. g., Verlinden B. V. v. Central Bank of Nigeria, 488 F.Supp. 1284 (S.D.N. Y.1980); Libyan American Oil Co. v. Socialist People's Libyan Arab Jamahirya, 482 F.Supp. 1175 (D.D.C.1980); Ipitrade International, S. A. v. Federal Republic of Nigeria, 465 F.Supp. 824 (D.D.C.1978). The discussion here, therefore, will not be extensive. The key question is whether Guinea lost its immunity either because it has waived that immunity, see 28 U.S.C. § 1605(a)(1) (1976), or because of its commercial activities in the United States, see 28 U.S.C. § 1605(a)(2) (1976). The Court finds that under both criteria Guinea lost

1. Article 91 of the Guinean law regarding corporate entities, adopted September 1, 1962, provides that:

   The State in a mixed economy company is a shareholder, like any other, and its rights and obligations are those derived from its statute as the shareholder, rather than as the State. Petitioner's Reply Brief, at 1.

2. The parties dispute whether petitioner could have proceeded to arbitration in the manner contemplated by the contract despite Guinea's refusal to participate. The Court finds, on the basis of the affidavits and evidence presented, that petitioner could not have proceeded under the contract. The Arbitration Act was the only mechanism available to the Court in view of its inability to order the President of ICSID to appoint arbitrators.

3. At hearing, counsel for Guinea was asked whether there was any explanation for Guinea's repeated failure—despite notice—to respond either in this Court or before the American Arbitration Association. Counsel stated he was unable to present any explanation.

its immunity and the Court accordingly had jurisdiction.

*Waiver*

■ Under 28 U.S.C. § 1605(a)(1) (1976), a foreign state loses its immunity in any case "in which the foreign state has waived its immunity either explicitly or by implication." The House Report accompanying the FSIA, moreover, states that:

> With respect to implicit waivers, the courts have found such waivers in cases where the foreign state has agreed to arbitration in another country or where the foreign state has agreed that the law of a particular country should govern a contract.

H.R.Rep.No. 94–1487, 94th Cong., 2nd Sess. 18, *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 6604, 6617. Although courts have differed on the extent to which the House Report language should be read as controlling the reach of the waiver provision, *compare Verlinden B. V. v. Central Bank of Nigeria, supra,* 488 F.Supp. at 1300–02, *with Ipitrade International, S. A. v. Federal Republic of Nigeria, supra,* 465 F.Supp. at 826, it is clear that on the facts of *this* case, there has been an implicit waiver of immunity by Guinea sufficient to give this Court jurisdiction.

No express provision in the SOTRAMAR contract sets forth a place for arbitration,[4] but by agreeing to arbitration before arbitrators selected by the president of ICSID, Guinea implicitly agreed to arbitration in the United States. ICSID is located in Washington, D. C., and under Rule 13 of ICSID's "Rules of Procedure for Arbitration Proceedings," sessions of its tribunals "shall meet at the seat of the Centre" unless another site is agreed upon by the parties and approved by ICSID itself. The only fair construction of the SOTRAMAR contract and the ICSID rules is that the parties contemplated arbitration to be held in the United States.[5] This gives the SOTRAMAR contract an even greater nexus with the United States than the contracts in other cases where waiver has been found. *See, e. g., Libyan American Oil Co. v. Socialist People's Libyan Arab Jamahirya, supra; Ipitrade International, S. A. v. Federal Republic of Nigeria, supra; cf. Verlinden B. V. v. Central Bank of Nigeria, supra.* Counsel for Guinea has argued that a waiver should be found only where there is *both* an agreement to arbitrate in another country and an agreement to be bound by the laws of another country. But that is too constricted a view. The Court finds that by agreeing to arbitration that could be expected to be held in the United States, Guinea waived its immunity before this Court within the meaning of 28 U.S.C. § 1605(a)(1) (1976).

*Commercial Activities*

Under 28 U.S.C. § 1605(a)(2) (1976), a foreign state also loses its sovereign immunity when it engages in commercial activities within the United States or in commercial activities outside the United States that have a "direct effect" within this country. The Court finds that Guinea engaged in activities that meet this standard.

■ Numerous meetings were held, including meetings in Connecticut and in the District of Columbia, relating to the contract. Guinea directed an American shipping group to perform substantial activities to aid SOTRAMAR. The Guinean ambassador to the United States engaged in several business-oriented contacts with officials of petitioner related to the project. The sum of these activities is more than sufficient to constitute commercial activity within the meaning of section 1605(a)(2), and to give the district courts jurisdiction over Guinea. Venue is proper in this Court under the express authority granted to the District Court for the District of Columbia by 28 U.S.C. § 1391(f)(4) (1976).

---

**4.** The contract does provide, however, a "law of a particular country" to govern the contract, and that is the law of Guinea.

**5.** The omission of a site for the arbitration cannot be viewed as a mere oversight by the parties. In the agreement between the Republic of Guinea and the Harvey Aluminum Company of Delaware concerning mining of the bauxite that would be carried by SOTRAMAR, the contract expressly states that "[a]rbitration shall take place in Geneva."

Having established that this Court has jurisdiction over Guinea, it is clear that the Order compelling arbitration was proper, *see* 9 U.S.C. § 4 (1976), and that this Court has authority to confirm the award, *see* 9 U.S.C. § 9 (1976); *cf. Marine Transit Corp. v. Dreyfus*, 284 U.S. 263, 275-76, 52 S.Ct. 166, 169, 76 L.Ed. 282 (1932). The Court is satisfied that the arbitration proceedings were conducted in a regular and proper manner and the award for damages and costs is confirmed in all respects.