**Helen LIU, in her individual capacity, as heir and special administrator of the estate of Henry Liu, and as guardian ad litem for George Liu, Plaintiff,**

v.

**The REPUBLIC OF CHINA, Wong Hsi-Ling, Hu Yi-Min, Chen Hu-Men, Chen Chi-Li, Wu Tun and Tung Kuei-Sen, Defendants.**

No. C–85–7461 EFL.

United States District Court, N.D. California.

Aug. 11, 1986.

John S. Martel, Farella, Braun & Martel, San Francisco, Cal. for defendant-Republic of China.

Jerome M. Garchik, San Francisco, Cal. for plaintiff.

Arthur L. Liman, Paul, Weiss, Rifkind, et al., New York City, for plaintiff-co-council.

Thomas G. Corcoran, Jr., Corcoran, Youngman & Rowe, Lloyd N. Cutler, Wilmer, Cutler & Pickering, Washington, D.C. for defendants-co-council.

## ORDER DENYING MOTION TO DISMISS ON ACT OF STATE GROUNDS

LYNCH, District Judge.

### Introduction

On October 15, 1984, Henry Liu was shot to death at his home in Daly City, California. Plaintiff, Helen Liu, suing in her individual capacity, as heir and special administrator of the estate of Henry Liu, and as guardian ad litem for George Liu, has filed this lawsuit alleging that the Republic of China ("ROC") and the named defendants are responsible for the death of her husband.

The complaint pleads six claims. Four claims seek recovery under various legal theories for the wrongful death of Henry Liu. A fifth claim seeks recovery for injury to Helen Liu, who was at home when the killing occurred. The final claim seeks recovery for the injury to Henry Liu for the initial assault on him by his killers.

The individual defendants named in the complaint have been tried and convicted by tribunals in the ROC of criminal conduct relating to the killing of Henry Liu.[1] The individual defendants include Vice Admiral Wong Hsi-ling, former director of the ROC's Defense Intelligence Bureau, as well as Major General Hu Yi-min and Colonel Chen Hu-men, also former officials of the Defense Intelligence Bureau. The remaining three defendants, Chen Chi-li, Wu Tun and Tung Kuei-sen, are ROC citizens who were allegedly recruited to assist in the killing of Henry Liu.

Currently before the Court is the ROC's motion to dismiss the claims against it on act of state grounds. The ROC does not argue that the actual killing of Henry Liu is an act of state which this Court may not review.[2] Rather, the ROC asserts the following:

The Republic of China does not dispute that Henry Liu's death was caused by the private individuals named in the Complaint. Indeed, the civilian and military courts of the ROC, in the course of convicting these individuals, have made formal findings to that effect. The present Complaint, however, does not rest on the facts and the published findings of the ROC courts. Instead, it alleges that the murder of Henry Liu was a deliberate official act of the ROC, that these individuals acted in concert with other unnamed ROC officials who approved and

1. Defendant Tung Kuei-sen, a fugitive, was convicted *inabsentia*.

2. "The ROC does *not* assert that the Act of State doctrine applies to murders or other actions by a foreign state or its agents that take place in the United States." ROC's Reply Brief, at 1 (emphasis in original).

   In a letter sent after the hearing on this matter, the ROC cites a number of opinions decided on July 18, 1986 by the Honorable Harold M. Fong. *See Sison v. Marcos,* No. 86–0225; *Trajano v. Marcos,* No. 66–0207; *Hilao v. Marcos,* No. 86–390; *Republic of the Philippines v. Marcos,* Nos. 86–0155 and 86–0213. In a number of those opinions, Judge Fong dismissed on act of state grounds allegations of kidnapping, torture and murder. All of these allegations appear to have involved conduct occurring in the Philippines, not the United States. Consequently, they provide no support for the argument that the killing of an American in the United States by agents of a foreign government should be considered an act of state for purposes of the doctrine. If the ROC is now making such an argument, the Court rejects it. *See Letelier v. Republic of Chile,* 488 F.Supp. 665, 674 (D.D.C.1980) (suit against the Republic of Chile regarding assassination of Chilean dissident leader in United States not subject to act of state doctrine); *Alfred Dunhill of London, Inc. v. Republic of Cuba,* 425 U.S. 682, 691 n. 7, 96 S.Ct. 1854, 1859 n. 7, 48 L.Ed.2d 301 (1976) ("Every sovereign State is bound to respect the independence of every other sovereign State, and the courts of one country will not sit in judgment on the acts of the government of another *done within its own territory.*") (emphasis added; quoting *Underhill v. Hernandez,* 168 U.S. 250, 252, 18 S.Ct. 83, 84, 42 L.Ed. 456 (1897).

authorized their actions, and that the criminal proceedings before the ROC tribunals were part of a conspiracy to cover up these official acts.

The ROC has at all times repudiated the acts of the individual defendants. It vigorously denies that the Government had knowledge of, participated in, or condoned their conspiracy. This position has been fully sustained by exhaustive military and civilian trials and appeals following thorough investigation of the facts.

Nevertheless, the Complaint would have this Court go behind the findings and judgments of the ROC courts to investigate *de novo* the alleged events in the ROC in the hope that this Court may disagree with what the ROC's courts have duly found. This would require the Court to inquire into, and sit in judgment upon, the most sensitive areas of the ROC's governmental affairs, proceedings and motivation. The ROC is confident that if this Court performed such a function it would reach the same conclusion as did the ROC courts. But as the United States would undoubtedly assert if the circumstances were reversed, the ROC submits that the Act of State doctrine bars the very inquiry itself, regardless of its outcome.

ROC's Points and Authorities, at 1–2 (emphasis omitted).

In resolving this motion, the Court requested the parties to brief two additional issues that it felt may have a bearing on how the Court would rule. These issues are (1) whether this suit is barred, as to the ROC, by the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602–11, and (2) whether the ROC may possibly be liable under *respondeat superior* for the activities of the individual defendants named in the complaint.

Having received the requested supplemental briefing and held oral argument on the matter, the Court denies ROC's motion to dismiss the complaint. For the reasons discussed below, the Court has concluded that it would be premature to dismiss plaintiff's complaint at this time. However, the Court notes that dismissal on act of state grounds may become necessary as the litigation of this matter progresses.

## I. ACT OF STATE DOCTRINE

"The act of state doctrine declares that a United States court will not adjudicate a politically sensitive dispute which would require the court to judge the legality of the sovereign act of a foreign state." *International Ass'n of Machinists v. OPEC*, 649 F.2d 1354, 1358 (9th Cir.1981), *cert. denied*, 454 U.S. 1163, 102 S.Ct. 1036, 71 L.Ed.2d 319 (1982). The traditional formulation of the doctrine is as follows:

> Every sovereign State is bound to respect the independence of every other sovereign State, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory. Redress of grievances by reason of such acts must be obtained through means open to be availed of by sovereign powers as between themselves.

*Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 691 n. 7, 96 S.Ct. 1854, 1859 n. 7, 48 L.Ed.2d 301 (1976) (quoting *Underhill v. Hernandez*, 168 U.S. 250, 252, 18 S.Ct. 83, 84, 42 L.Ed. 456 (1897)).

The act of state doctrine is not jurisdictional, as are questions of sovereign immunity, nor is its observance mandated by the Constitution. *DeRoburt v. Gannett Co., Inc.*, 733 F.2d 701, 702–03 (1984), *cert. denied*, 469 U.S. 1159, 105 S.Ct. 909, 83 L.Ed.2d 923 (1985). Rather, the doctrine stems from a recognition by the "Judicial Branch that its engagement in the task of passing on the validity of the foreign acts of state may hinder rather than further this country's pursuit of goals both for itself and for the community of nations as a whole in the international sphere." *Timberlane Lumber Co. v. Bank of America*, 549 F.2d 597, 605 (9th Cir.1976), *aff'd*, 749 F.2d 1378 (9th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 3514, 87 L.Ed.2d 643 (1985) (quoting *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 423, 84 S.Ct.

923, 937, 11 L.Ed.2d 804 (1964)). In essence, it is a judicial doctrine of self restraint based on an acknowledgment that certain disputes involving foreign affairs should be be left for resolution by one of the other two branches of government. *See International Ass'n of Machinists*, 649 F.2d at 1358–59.

The very nature of the act of state doctrine makes it difficult to define. The Ninth Circuit has stated that the "doctrine does not suggest a rigid rule of application.... '[S]ome aspects of international law touch more sharply on national nerves than do others; the less important the implications of an issue are for our foreign relations, the weaker the justification for exclusivity in the political branches.' The decision to deny access to judicial relief is not one we make lightly.... The 'touchstone' or 'crucial element' is the potential for interference with our foreign relations." *Id.* at 1360 (quoting in part *Sabbatino*, 376 U.S. at 428, 84 S.Ct. at 940) (citations omitted); *see also DeRoburt*, 733 F.2d at 704.

Obviously, a "successful act of state defense must rest on a factual showing that an act of state occurred...." *Ramirez v. Weinberger*, 745 F.2d 1500, 1534 (D.C.Cir. 1984), *vacated on other grounds,* —— U.S. ——, 105 S.Ct. 2325, 86 L.Ed.2d 255 (1985). The ROC concedes, as it must, that the killing of an American citizen in the United States is not the type of activity to which the act of state doctrine has generally applied.[3] *Cf. Letelier v. Republic of Chile*, 488 F.Supp. 665, 674 (D.D.C.1980) (suit against the Republic of Chile regarding assassination of Chilean dissident leader in United States not subject to act of state doctrine). The ROC argues that the act of state doctrine is nevertheless applicable because the plaintiff in this case "asks this Court to determine that those investigations, prosecutions, and court adjudications [of the individual defendants] not only were erroneous, but were so lacking in integrity as to constitute mere shams." ROC's Points and Authorities, at 9. This charge

arises from the fact that contrary to the findings in the criminal prosecutions of the individual defendants, the plaintiff alleges that other members of the ROC government played a role in the killing of Henry Liu and that their role has been covered up by the ROC. The ROC also argues that the case must be dismissed on act of state grounds because litigation of the case would involve searching inquiries into the internal decisionmaking of the ROC and into ROC national security and intelligence matters. ROC's Points and Authorities, at 4.

Even assuming that the ROC's description of the ramifications of allowing this case to proceed is accurate, the applicability of the act of state doctrine is, for a number of reasons, not clear-cut.

First, it is not clear that the ROC has shown the existence of an act of state. Not all activities of a foreign sovereign state are acts of state for purposes of the doctrine. *Timberlane*, 549 F.2d at 606. Typically, "acts of state" involve acts by which a foreign state "has exercised its jurisdiction to give effect to its public interests." *Id.* at 607 (9th Cir.1976) (quoting The Restatement (Second) of Foreign Relations Law of the United States § 41 (1965)). The ROC concedes that the actual killing of Henry Liu in this Country is not an act that is subject to the doctrine. ROC's Reply Brief, at 1. And courts have generally not considered the resolution of a controversy in a foreign tribunal as an act of state. Quoting the Restatement (Second) of Foreign Relations Law of the United States, the Ninth Circuit has observed as follows:

An 'act of state' as the term is used in this Title involves the public interest of a state as a state, as distinct from its interest in providing the means of adjudicating disputes or claims that arise within its territory.... A judgment of a court may be an act of state. Usually it is not, because it involves the interests of private litigants or because court adjudication is not the usual way in which the

state exercises its jurisdiction to give effect to public interests.

*Id.* at 608 (quoting the Restatement at comment "d," page 127).

■ Second, the fact that the litigation of this case may involve embarrassing or intrusive discovery does not necessarily implicate the act of state doctrine. As described above, the traditional purpose of the doctrine has been to avoid judicial review of acts of foreign states, not to dismiss cases otherwise properly before the court on the basis that the required discovery may intrude on the interests of or embarrass a foreign state. *But cf. Clayco Petroleum Corp. v. Occidental Corp.*, 712 F.2d 404, 407 (9th Cir.1983), *cert. denied*, 464 U.S. 1040, 104 S.Ct. 703, 79 L.Ed.2d 168 (1984) (suggesting a willingness to limit judicial inquiries solely on the basis that they would "impugn or question the nobility of a foreign nation's motivation").

Finally, unlike most cases dismissed on act of state grounds, resolution of this case would not necessarily require the Court to directly pass judgment on the legitimacy of an act of state. *See generally Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1048 (9th Cir.1983), *cert. denied*, 464 U.S. 849, 104 S.Ct. 156, 78 L.Ed.2d 144 (1983) ("issue ... is whether resolution of Northrop's claims would necessitate direct judicial inquiry into" foreign military procurement decisions). The Court would not directly challenge the findings of the ROC courts, although its findings could conceivably be inconsistent with those of the ROC courts. Instead, the Court's task would be limited to determining whether the ROC is responsible for the killing of Henry Liu. The ROC wholeheartedly agrees that the killing of Henry Liu was an illegal act. Consequently, the fact that this Court would be required to find that the killing of Henry Liu was "wrongful" certainly does not require application of the act of state doctrine. *Cf. Letelier v. Republic of Chile*, 488 F.Supp. 665 (D.D.C.1980) (alleged assassination by agents of Chilean government of a dissident in the United States not an act of state).

Notwithstanding the Court's expressed concerns regarding the applicability of the act of state doctrine, if the Court could conclude at this stage in the litigation that a finding of liability on the part of the ROC would *necessarily* involve findings inconsistent with those made by the courts of the ROC or involve a probing inquiry into ROC national security and intelligence affairs, the Court may be inclined to dismiss the case.

Even though this case may not be easily "pigeon holed" as one involving the act of state doctrine, this Court does not believe that the doctrine is therefore clearly inapplicable. The doctrine is one of discretion and must be applied in light of the circumstances of each case. As mentioned earlier, the Ninth Circuit and the Supreme Court have recognized that the act of state doctrine is not an "inflexible and all encompassing rule." *DeRoburt*, 733 F.2d at 703. "The teaching of the courts which have considered application of the act of state doctrine is that the doctrine is to be applied pragmatically and flexibly, with reference to its underlying considerations." *Tchacosh Co., LTD v. Rockwell Intern. Corp.*, 766 F.2d 1333, 1337 (9th Cir.1985). The touchstone for determining the doctrines applicability is the potential for interference with our foreign relations. *Timberlane*, 549 F.2d at 607. "Whether forbearance by an American court in a given situation is advisable or appropriate depends upon the balance of relevant considerations." *Id.* at 606.

The concerns identified by the ROC are certainly of the same nature as the concerns which have led courts to apply the act of state doctrine. Clearly, a lawsuit that calls into question the propriety and thoroughness with which another country has investigated and prosecuted wrongdoing by high level intelligence officials involving such a serious offense as premeditated murder touches "sharply on national nerves." *Sabbatino*, 376 U.S. at 428, 84 S.Ct. at 940. Similarly, few inquiries allowed by an United States court could be more intrusive than one directed at the

highest levels of a foreign country's intelligence bureau. The Ninth Circuit has previously recognized that even when an act of state is not directly implicated a "case may get so deeply involved in affairs of state" that the trial judge may on his own motion have to terminate the litigation. *DeRoburt*, 733 F.2d at 704.

▮ Despite the concerns expressed above, the Court does not believe that the case should be dismissed at this stage of the litigation. The act of state doctrine provides a basis for dismissal only if the case cannot be resolved without passing on the validity of the relevant act of state.[4] *See Northrop*, 705 F.2d at 1048; *Ramirez v. Weinberger*, 745 F.2d 1500, 1533–37 (D.C.Cir.1984) (en banc), *vacated on other grounds,* —— U.S. ——, 105 S.Ct. 2325, 86 L.Ed.2d 255 (1985); *Sharon v. Time, Inc.*, 599 F.Supp. 538, 546 (S.D.N.Y.1984). In this case, the Court believes that the plaintiff may be able to establish liability on the part of the ROC without calling into question any of the factual findings of the ROC tribunals or conducting intrusive inquiries into the workings of the ROC's Defense Intelligence Bureau.

As described earlier, the ROC has admitted the involvement of a number of its officials in the killing of Henry Liu. Moreover, the ROC has accepted as true the factual findings in that regard made by its own tribunals. Based on the briefing provided by the parties, the Court has concluded that the plaintiff *may* be able to impute the admittedly improper acts of the named defendants to the ROC by use of the doctrine of *respondeat superior*. Thus, before this Court considers dismissing this case on act of state grounds, the plaintiff should be given an opportunity by way of a summary judgment motion to argue the liability of ROC based on the factual findings of the ROC's tribunals.

This Court's determination to allow a summary judgment motion on the *respondeat superior* liability of the ROC should *not* suggest that the Court has concluded that such liability exists. The Court has simply determined that, given the ROC's admissions regarding the actions of the named defendants, the plaintiff should be given an opportunity to brief and argue the issue of *respondeat superior* before this Court considers dismissing the plaintiff's claims against the ROC on act of state grounds.

The Court is aware that in their previous filings and upon the request of this Court both sides addressed the issue of *respondeat superior* liability. Nevertheless, the Court does not believe that it would be appropriate for it to decide the issue on the basis of the papers previously provided it. The Court wishes to give both sides a full opportunity to argue the *respondeat superior* issue in light of this Order.[5] Thus, the plaintiff is ordered to file a summary judgment motion on whether, accepting the factual findings of the ROC tribunals as admissions by the ROC, the ROC is liable under principles of *respondeat superior* for any of the claims asserted against it. The motion should be briefed and scheduled in accordance with the local rules and the rules of this Court generally applicable to such motions.

## II. SOVEREIGN IMMUNITY

In its original motion to dismiss, the ROC did not raise the issue of whether dismissal was required under the Foreign Sovereign

---

**4.** "Our opening brief made clear that we do not assert that the Act of State doctrine would apply to a complaint that accepted the facts as found by the ROC courts." ROC's Reply Brief, at 2.

**5.** Both parties filed excellent briefs on the issue of *respondeat superior* liability, and the Court does not anticipate that the parties' summary judgment briefs will vary considerably from those previously submitted. However, because the plaintiff's previous argument was not based on the premise that the facts of the case are as admitted by the ROC ("It is the complaint, not defendant's 'findings', which must be accepted as true here." Plaintiff's Supp. Opposition, at 2; "We thus approach this Court's inquiries unburdened by the assumption defendant indulges— that the Taiwan proceedings control this Court's decision on sovereign immunity and *respondeat superior*." *Id.* at 7.), the Court has concluded that fairness dictates that the *respondeat superior* issue be formally briefed as a motion for summary judgment.

Immunities Act ("FSIA"), 28 U.S.C. § 1605(a). In requesting briefing on the availability of *respondeat superior* liability, the Court also asked the parties to address the sovereign immunity issue because of its jurisdictional nature. Having reviewed the parties' briefs, the Court has concluded that at this stage in the litigation the Court cannot dismiss the claims against the ROC on grounds of sovereign immunity.

Section 1605(a) of the FSIA provides that a "foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

(5) ... in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph [5] shall not apply to ... (A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused...."

28 U.S.C. § 1605(a).

■ Section 1605(a) removes immunity for torts committed either by the foreign state or by its agents acting within the scope of their employment. In this case, the plaintiff alleges both grounds: (1) that the ROC actually authorized the murder of Henry Liu and (2) that Henry Liu's killers were agents of the ROC acting with the scope of their employment. These allegation are sufficient to avoid dismissal of this action at this point in the litigation.

■ The ROC argues that even if the Court finds that plaintiff has sufficiently alleged that the killing of Henry Liu was authorized by the ROC or was performed by an agent of the ROC acting within the

scope of his authority, the complaint should still be dismissed on grounds of sovereign immunity. Section 1605(a)(5)(A) provides that suits otherwise allowed under section 1605(a)(5) will not be allowed if based on the exercise or performance of a discretionary function. *Id.* The ROC asserts that if the Court accepts plaintiff's allegation that the killing of Henry Liu was either authorized by the ROC or within the scope of the employment of those individuals who actually were involved, the Court must conclude that the decision to kill Henry Liu and the carrying out of that decision involved a "discretionary function." The Court rejects this argument.

The discretionary function exemption contained in section 1605(a)(5)(A) of the FSIA corresponds with a similar exemption found in the Federal Tort Claims Act ("FTCA"). *Compare* 28 U.S.C. § 1605(a)(5)(A) *with id.* § 2680(a). The Ninth Circuit has recognized that Congress intended that courts rely on judicial interpretations of the FTCA's similar provision when interpreting section 1605(a)(5)(A) of the FSIA.[6] *Olsen by Sheldon v. Government of Mexico,* 729 F.2d 641, 646–47 (9th Cir.), *cert denied sub nom.,* 469 U.S. 917, 105 S.Ct. 295, 83 L.Ed.2d 230 (1984).

In interpreting the FTCA, the Supreme Court has stated that an act is discretionary in nature when "there is room for policy judgment and decision...." *Dalehite v. United States,* 346 U.S. 15, 35–36, 73 S.Ct. 956, 968, 97 L.Ed. 1427 (1953). Other cases have held that the discretionary function exception does not provide immunity for acts "clearly outside the authority delegated...." *Birnbaum v. United States,* 588 F.2d 319, 329 (2d Cir. 1978); *see also Hatahley v. United States,* 351 U.S. 173, 181, 76 S.Ct. 745, 751, 100 L.Ed. 1065 (1956); *Medley v. United States,* 543 F.Supp. 1211, 1219 (N.D.Cal. 1982).

**6.** "The FSIA provides considerable guidance as to which acts or decisions constitute discretionary functions. Not only does the language of the FSIA discretionary function exception replicate that of the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2680(a), but the legislative history of the FSIA, in explaining section 1605(a)(5)(A),

directs us to the FTCA.... To determine the scope of the discretionary function exception of the FSIA, we therefore turn to the interpretation given the similar FTCA provision." *Olsen by Sheldon v. Government of Mexico,* 729 F.2d 641, 646–47 (9th Cir.), *cert. denied sub nom.,* 469 U.S. 917, 105 S.Ct. 295, 83 L.Ed.2d 230 (1984).

This Court holds that planning and conducting the murder of Henry Liu could not have been a discretionary function as defined by the FSIA. Such an act is not one where "there is room for policy judgment and decision." The killing of Americans residing in the United States is not a policy option available to foreign countries. Moreover, the ROC appears to admit that the killing of Henry Liu could not, under ROC law, have been legally authorized by anyone in that government. The ROC and its agents simply did not have the discretion to commit the acts alleged.[7] Judge Green aptly expressed this view in a similar case:

> Whatever policy options may exist for a foreign country, it has no "discretion" to perpetrate conduct designed to result in the assassination of an individual or individuals, action that is clearly contrary to the precepts of humanity as recognized in both national and international law.

*Letelier v. Republic of Chile,* 488 F.Supp. 665, 673 (D.D.C.1980); *see also Estate of Silme Domingo v. Republic of the Philippines,* No. C 82–1055–V (W.D.Wash. July 17, 1984) [Available on WESTLAW, DCTU database] (adopting Judge Green's reasoning in a similar case).

Because plaintiff has alleged sufficient facts to fall within the exception to sovereign immunity contained in section 1605(a)(5) of the FSIA and because the discretionary function exemption is inapplicable, the Court cannot dismiss this case on sovereign immunity grounds at this stage in the litigation.

### Conclusion

The Court denies without prejudice the ROC's motion to dismiss on act of state grounds. The Court has concluded that the claims against the ROC should not be dismissed at least until the plaintiff has had the opportunity to argue *respondeat superior* liability based on the admissions of the ROC. The Court has also concluded that, at this point in the litigation, the claims against the ROC are not barred by sovereign immunity. Plaintiff's allegations fall within the FSIA's immunity exception and do not relate to the exercise or performance of a discretionary function. The Court orders the plaintiff to file a summary judgment motion consistent with the directives of this Order. After that motion is decided, the Court will once again consider whether this case should be dismissed on act of state grounds.

IT IS SO ORDERED.

---

**7.** In *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984), the Supreme Court stated that, "[i]t is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." *Id.* The rationale underlying the discretionary function exception is a desire "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* "[I]f judicial review would

encroach upon this type of balancing done by an agency, then the exception would apply." *Chamberlin v. Isen,* 779 F.2d 522, 523 (9th Cir. 1985) (quoting *Begay v. United States,* 768 F.2d 1059, 1064 (9th Cir.1985)).

The alleged conduct involved here is the intentional killing of Henry Liu. A determination that such conduct is wrong certainly does not involve the type of judicial second-guessing that is likely to encroach on the ability of foreign countries to make policy decisions entitled to any respect at all in the international community.